## THE STATE ex rel. THOMAS WARD McMANUS v. HUGO MUENCH, Judge.

**In Banc, March 9, 1909.**

1. **EQUITY JURISDICTION: Limited by Pleadings: Res Adjudicata: Collateral Attack.** Jurisdiction of the subject-matter of a concrete case in equity or law is only acquired by a court through pleadings filed, process issued and served or appearance entered, and decrees entered within the lines of the issues framed by the pleadings. The courts cannot, of their own motion, set themselves in motion, nor have they power to decide questions except such as are presented by the parties in their pleadings. The parties by their attorneys make the issues, and what is decided within the issues is *res adjudicata;* anything beyond is *coram non judice* and void.

2. ————: ————: **Trust Estate: Appointment of Trustee: Retaining Jurisdiction.** Suit was brought in the circuit court by the infant beneficiary under a will to have a new trustee appointed in lieu of the trustee named in the will, who had died, the will providing for no successor, but giving "said trustee, or his successors in trust, full power, with the approval of the St. Louis Circuit Court, to sell any of the property subject to this trust." The court appointed a trustee, but retained the cause in court for the purposes of administration, and to that decree no exception was saved and from it no appeal was taken. Afterwards the court upon motion filed by the trustee and served on the other devisee (the relator), who made no answer, authorized the trustee to sell a part of the trust estate to pay debts, and refusing to grant relator an appeal from that order he asks for a writ of prohibition. *Held*, that the court had no authority to retain control of the estate, the issues in that case being the appointment of a new trustee and the putting of that trustee in the shoes of the old one,—vesting him with title to the real estate devised by the will to the trustee for the use of the infant beneficiary. A trust estate once in chancery for any purpose is not always in court for all purposes, and a court cannot of its own motion hold it within its grasp for other purposes than those stated in the pleadings.

3. ————: ————: **Power Given by Will.** The said will contemplated that the trust estate should be administered by a trustee, and not by the court. By it, a sale of real estate was to be approved, not made, by the court. But aside from all that, the subject-matter of the administration of the estate was not brought into court by the original procedure to have a trustee appointed.

4. ————: ————: **Coram Non Judice: Collateral Attack: No Appeal.** So much of any judgment as is void is subject to collateral attack. And where the court adjudicated a matter not embraced in the issues as made by the pleadings—for example, where the court retained jurisdiction in a case to have a new trustee appointed in the stead of the deceased trustee, for the purpose of exercising a control over the administration of the estate—that part of the judgment is *coram non judice* and void, and the fact that the decree was by consent and all parties then abided the judgment and did not appeal, does not affect the right of any of them from subsequently disputing its validity.

5. ————: ————: **Approval of Counsel.** Nor does the fact that counsel of the non-complaining parties wrote their "O. K." on the decree as prepared by other counsel and signed their names after those symbols, affect the court's jurisdiction. Counsel employed in the matter of the appointment of a new

trustee to administer a trust estate and to invest that trustee with the title the estate, do not thereby and without more hold a warrant of attorney from their client to confer jurisdiction on the court to administer the whole trust after the appointment of the new trustee.

## Prohibition.

RULE MADE ABSOLUTE.

*T. J. Rowe, Thos. J. Rowe, Jr.,* and *Henry Rowe* for relator.

On October 23, 1908, the circuit court of the city of St. Louis had no jurisdiction over either the person of relator or the subject-matter of the decree. ''Jurisdiction in the court is the power to hear and determine the particular case involved. If this power to hear and determine the particular case does not exist in the court in point of law, then there can be no jurisdiction in the case.'' People v. Dist. Ct. of Lake Co., 26 Colo. 386; Jones v. Brown, 54 Iowa 74; Bingham v. Henrici (Pa.), 16 Atl. 618. In Andrews' Stephen's Pleading (2 Ed.), page 34, we find the following clear, correct and succinct statement of judicial power in civil matters: ''The judicial power can be set in motion in civil matters only by some person—using the word in the broadest sense—in a case against another person. The courts cannot, *ex mero motu,* set themselves in motion, nor have they power to decide questions except such as are presented by the parties in their pleadings. The parties by their attorneys make the record, and what is decided within the issue is *res adjudicata;* anything beyond is *coram non judice* and void.'' And in support of the above propositions that appear to be axiomatic, the following decisions are cited: State of Georgia v. Stanton, 6 Wall. 76; Luther v. Burden, 7 How. 1; Fletcher v. Tuttle, 150 Ill. 41; Kerfoot v. People, 51 Ill. App. 409; Dicey v. Reed,

78 Ill. 261; United States v. Arredondo, 6 Pet. 709; People v. Liscomb, 60 N. Y. 559; Reynolds v. Stockton, 140 U. S. 254; Munday v. Vail, 34 N. J. L. 418; Jacobson v. Miller, 41 Mich. 90; Cromwell v. Sac. Co., 94 U. S. 351; Hope v. Blair, 105 Mo. 93. The writ of prohibition is available to keep a court within the limits of its lawful power in a given case, no less than to prevent its cognizance of causes not committed by law to its jurisdiction. State ex rel. v. Slover, 126 Mo. 652; State ex rel. v. Elkin, 130 Mo. 90; Railroad v. Wear, 135 Mo. 230; State ex rel. v. Wood, 155 Mo. 425.

*Leighton Shields* and *Wm. R. Orthwein* for respondent.

(1) In all cases of trusts the jurisdiction of a court of equity is complete. Brandon v. Carter, 119 Mo. 580; Bank v. Chambers, 96 Mo. 467; Church v. Robberson, 71 Mo. 326; Bridges v. Rice, 99 Ill. 417; Morgan v. Roberts, 38 Ill. 80; Krohn v. Williamson, 62 Fed. 877; Hamer v. Cook, 118 Mo. 489. (2) The question of jurisdiction is not limited to the pleadings alone, but must be tried by the whole record. Adams v. Cowles, 95 Mo. 506; State ex rel. v. Dearing, 180 Mo. 63; Orchard v. Bank, 121 Mo. App. 347; Hardware Co. v. Lang, 54 Mo. App. 152; Bell v. Brinkmann, 123 Mo. 277; Hedrix v. Hedrix, 103 Mo. App. 44; Hiles v. Rule, 121 Mo. 254; Armstrong v. Crooks, 83 Mo. App. 149. (3) The original action in the St. Louis Circuit Court was submitted on an agreed statement of facts, to which relator was a party, and which became part of the record of that action. (4) Where enough facts are alleged to disclose that the case falls within a class of proceedings which the court is lawfully authorized to hear and decide, the question of the sufficiency of the showing to set the court in motion is one for the determination of the court itself. State ex rel. v. Ross, 122 Mo. 470; Dowdy v. Wamble,

110 Mo. 285; Adams v. Cowles, 95 Mo. 509. (5) And should the court err in such determination, that is not a usurpation of judicial authority, but error for which the proper remedy of the party aggrieved is by appeal. Gazollo v. McCann, 63 Mo. App. 420; State ex rel. v. Seay, 23 Mo. App. 630; State ex rel. v. Lubke, 29 Mo. App. 558; State ex rel. v. St. Louis Court of Appeals, 99 Mo. 224; Hope v. Blair, 105 Mo. 85. (6) When a court of equity once acquires jurisdiction of a cause, it will not relax its grasp upon the *res* until it shall have avoided a multiplicity of suits by doing adequate and complete justice between the parties. Real Estate Co. v. Collonious, 63 Mo. 295; Corby v. Bean, 44 Mo. 379; Keeton v. Spradling, 13 Mo. 321; Nelson v. Betts, 21 Mo. App. 232; Woodard v. Mastin, 106 Mo. 362; Reyburn v. Mitchell, 106 Mo. 378; Leeper v. Taylor, 111 Mo. 321; Morrison v. Harrington, 120 Mo. 668; Harrison v. Craven, 188 Mo. 602; Martin v. Tidwell, 36 Ga. 345. (7) When the administration of an estate is removed into a court of equity for any purpose, or in any part, it is there in whole and for all purposes. Tygh v. Dolan, 95 Ala. 271; St. Louis v. Crow, 171 Mo. 280; Pearson v. Darrington, 21 Ala. 177; 1 Pomeroy, Eq. Jurisprudence, secs. 234, 235; Sanders v. Soutter, 126 N. Y. 183; Keeton v. Spradling, 13 Mo. 323; Youmans v. Youmans, 26 N. J. Eq. 154. (8) The will conferred jurisdiction on the circuit court to pass on all sales of the property of said estate, providing thereby that sales of said property must be with the consent of said court. (9) Relator expressly agreed in the original decree therein, that the St. Louis Circuit Court retain jurisdiction of the parties until further order of the court, in respect to all matters connected with trustees' administration of said trust. (10) Jurisdiction cannot be conferred on a court by consent of parties, but where a court of equity first rightfully acquires jurisdiction of an action, jurisdiction of the court as to other questions arising in said action can

be conferred on said court by the consent of the parties; they thereby waiving all right to question in the Supreme Court the jurisdiction of the lower court. Stroud v. Vanzant, 30 Ark. 90.

LAMM, J.—This is an original proceeding on the suggestion of relator for the State's writ of prohibition directed to the Hon. Hugo Muench, circuit judge —the suggestion being within section 4448, Revised Statutes 1899 (q. v.). Passing a rule that respondent show cause, we let a preliminary writ go. On return coming in, relator moves for judgment on the pleadings and that the preliminary rule be made absolute.

Such is the issue at law up for determination.

The motion confesses the averments of the return. On the other hand, the return practically confesses the averments of fact in the petition. In this condition of things, borrowing from both, we make the following statement of the case:

Camilla S. W. McManus died testate, seized of a great estate in realty in St. Louis, in November, 1905, making her granddaughter, Camilla S. W. Burrows, and her son, Thomas Ward McManus (relator), devisees under her will. To Thomas Ward, one-half of the estate was devised absolutely. One-third of the remainder went to the granddaughter, Camilla, absolutely, as we infer. However that be, two-thirds of the remainder was devised to William F. Crow in trust, said trustee to manage it, give bond and pay the net income over to the granddaughter, Camilla, during her life. If she died before Thomas Ward then the trust estate became his absolute property. If he died before her it became absolutely hers.

The will being probated, Crow qualified as trustee and took possession of the trust estate with the burden of administering it under the will. Among other provisions of the will was this: "I hereby give said

217 Sup—9

trustee, or his successors in this trust, full power, with the approval of the St. Louis Circuit Court, to sell any of the property subject to this trust.'' In that connection it provides that the trustee is authorized and directed to invest all moneys and the proceeds of all sales of the trust property in ways pointed out.

Mr. Crow died on December 3, 1907, leaving a brother of the half blood, and certain descendants of a brother of the full blood and sisters of the half blood, as his heirs.

The will nominating no successor to the trust, the *cestui que trust,* Camilla, thereupon brought suit in the circuit court of St. Louis against Thomas Ward McManus as devisee, and said heirs at law of the said trustee. Her petition made averments only pertinent to the following relief and no other: *First,* the appointment of a trustee in place and stead of William F. Crow, deceased; and, *second,* to divest out of his said heirs the legal title to the trust estate, cast on them by the death of their ancestor, and to vest the same in the court's appointee.

Camilla pointed out in her petition that the live duties of trustee called for not only fine integrity and business capacity but personal friendship towards her, as *cestui que trust,* that she was primarily interested in the selection of a new trustee acceptable to her from such standpoints, and that Mr. Crow was selected by her grandmother for that fiduciary relation because he ideally filled the office of trustee. She suggested Henry F. Hafner as Mr. Crow's successor, he possessing the qualifications alleged by her to be incident and necessary to administering the trust.

Thomas Ward admitted by answer all allegations of the petition material to the appointment of a new trustee and the divesting and vesting of the legal title to the trust estate. He joined issue only on those averments relating to the appointment of Mr. Hafner because of his alleged marked friendship to Camilla,

averring that the trustee should stand neutral in that particular and be an impartial person as between him and her.

The adult defendants (heirs of Crow) answered confessing the allegations of the petition and consenting to the appointment of a successor in trust. A minor defendant (one of Crow's heirs) answered through his guardian *ad litem,* averring ignorance of the facts, pleading his tender years, asking that strict proof be made and praying the court to protect his rights.

Such other proceedings were had in that cause that it came to judgment on May 4, 1908. At the trial, evidence was put in and admissions additional to those in the pleadings were made. Thereupon the court made a finding of facts substantially in accord with the allegations of the petition and spread its finding of record in its decree. Based on such findings, it was ordered, adjudged and decreed that Matthew Park, Esq., be appointed trustee as successor to William F. Crow, deceased, that the title to the trust estate vested in him by the will be divested out of his heirs at law and vested into the new trustee, who should thereafter have the rights and powers and be subject to the duties and obligations defined in the grandmother's will. The court fixed the trustee's bond at the penal sum of $10,000, and provided for additional bond in certain contingencies. Adjudging costs, etc., the decree contains the following clause (Note: This clause lies at the root of this controversy): *"It is further ordered, adjudged and decreed that this cause shall be retained in this court, as to the plaintiff and defendant, Thomas Ward McManus, and as to said trustee, Matthew Park, until the further order of this court in respect to all matters connected with the qualifications of said Matthew Park, as trustee, and his administration of said trust."*

In that proceeding, Sim T. Price and R. M. Nichols were attorneys for Thomas Ward McManus; John B. Denvir, Jr., for the heirs of William F. Crow; and James P. Maginn, for the granddaughter, Camilla. It seems a draft of the decree was prepared and that such draft bears the following earmarks: "O. K. [signed] Sim T. Price, R. M. Nichols, attys. for Thomas Ward McManus. O. K. (signed), John B. Denvir, Jr."

On the 24th of July, 1908, the trustee filed a motion in the aforesaid cause, calling the court's attention to the fact that it had retained jurisdiction "on all matters pertaining to the administration of the trust herein" and showing to the court that the trustee had retaining counsel and, in and about the performance of legal services as such, they had rendered services for which they claimed a certain sum, and an order was prayed to allow and pay. Accompanying this motion was an itemized account of length and particularity, stating the dates on which services were rendered and their character and extent. Notice was given of the filing of this motion and, on a day later in July, the parties appeared by counsel. The court having indicated that the attorney's fees should be paid out of the income and not out of the *corpus* of the trust estate, Thomas Ward McManus withdrew from the hearing, deeming that, on that view, he had no concern in it. Thereupon the court adjudged and decreed that the trustee pay a certain sum to his attorneys out of the income of the trust estate. It seems that the form of this decree was also drafted and bears the following: "O. K. (signed), R. M. Nichols, attorney for Thomas Ward McManus."

Neither the last judgment nor the original decree, divesting the title of the trust estate out of the heirs of the deceased trustee and appointing Mr. Park as successor in trust and vesting the title in him, was appealed from.

So matters stood until October, 1908. On the ninth day of that month a notice was served, entitled in the cause aforesaid and directed to Thomas Ward and Camilla, notifying them and each of them that the trustee would on the 12th day of October, 1908, present a petition in said cause requesting the court to empower him to *borrow* on the trust property a sum of money sufficient to pay off charges against the estate, praying that directions be given as to the terms and manner of making the loan and that an order be made determining whether said charges against the trust estate in whole or in part should be paid out of its *corpus* or income. This notice was served on Thomas Ward on October 9, 1908. As we grasp it, the petition foreshadowed by such notice was filed in the principal cause on the 13th instead of the 12th of October. It sets forth that jurisdiction of the trust estate was retained by the court by its original decree. On such postulate it proceeds to show that notice was given to Camilla and Thomas Ward; it then sets forth a description of the trust property (which we omit) and the appraisement of certain parts of it, and avers it was allotted to the trustee by a judgment in a partition suit in the circuit court of St. Louis; that it was there adjudged that the trustee should pay one-third of the taxes, general and special, existing as charges against the entire estate of Camilla S. W. McManus, testatrix; that said taxes had accrued to a large amount and were running at a punitive rate of interest; that the trustee had no funds to pay them; that the costs in said partition suit (inclusive of commissioners and attorneys' fees), one-third of which was taxed against the trust estate, aggregated $33,614.45, which the trustee was unable to pay for lack of funds; that he had made efforts to sell the unimproved real estate, but that stringency in the money market and the weak demand for that kind of property had prevented a sale; that the trustee believed the financial sky would

brighten and that, say, in a year, he could obtain a
reasonable price largely in excess of that now offered;
that a present sale would result in waste and loss to
the trust estate; that the attorneys and commissioners
in the partition suit would wait no longer for their
costs and fees, but proposed at once to sue out an
execution on the partition judgment and knock off the
property at sheriff's vendue to satisfy it; that such
sale, because of the prevailing money market, would
work a great hardship on the trust estate by sacrific-
ing it.

Wherefore, he prayed for power to borrow $20,000
to pay his *pro rata* of said costs and accrued taxes,
to be secured by a trust deed on the *corpus* of the
estate, due two years from date with current interest,
and to pay commissioners for securing the loan "and
that the court make such orders and grant him such
relief as may appear proper in the premises."

Continuing, the petition avers that certain attor-
neys have unliquidated charges against the trust estate
for legal services rendered in the partition suit dur-
ing the trusteeship of Mr. Crow; that part of the back
taxes accrued in the lifetime of testatrix, part of them
are special tax bills for street sprinkling and street
improvement; that there is a controversy whether cer-
tain items should be charged against the *corpus* or
income of the trust estate.

Wherefore, petitioner prayed the judgment and
direction of the court in that behalf.

To the foregoing notice Thomas Ward McManus
paid no attention and to that petition he remained
mute, answering not.

Presently, on the 23d day of October, 1908, the
matter coming on for a hearing, the following decree
was entered:

"The above matter coming on to be heard this
day, upon the application of Matthew Park, trustee
under the will of Camilla S. McManus, deceased, for

permission, pursuant to the last will of Camilla S. McManus, deceased, to alienate part of the trust estate herein by mortgage or in such other manner as to the court might seem meet and proper in the premises, in order that said trustee may pay charges against said trust estate duly allowed by the St. Louis Circuit Court in a cause in partition, being numbered 43,345, in Division No. 4 thereof, and such other proper costs, expenses, and liens as this court may by proper order direct to be discharged therefrom, and the court having been fully and duly advised in the premises by counsel for trustee and other parties in interest, all of whom have been duly notified of said application as shown by the evidence; and this court having reserved the power in the original decree herein to make such orders in the administration of the trust as might be necessary, it is hereby ordered by this court by virtue of the power conferred by the will of Camilla S. McManus, deceased, that said trustee sell at public auction to the highest bidder the following described real estate lying and being situate in the city of St. Louis, in lieu and stead of the tract of land in the petition described, belonging to and being part of the trust estate of which said Matthew Park now stands seized as such trustee, to-wit: [Here follows a description of the real estate to be sold, which we omit.]

"It is further ordered that said sale shall be either for cash or at the option of the purchaser for one-third cash, and remaining two-thirds payable in one and two years from date of sale with interest from date at six per cent per annum, deferred payments to be secured by customary mortgage upon the property sold; said sale to be conducted at the east front door of the court house in the city of St. Louis, Missouri, at 12 o'clock noon on Monday, the 16th day of November, 1908; and that said trustee shall give public notice of said sale by advertisement thereof for twenty days in a daily newspaper printed in the English language in the city of

St. Louis, the last insertion to be not more than two days previous to the day of sale.

"It is further ordered that said trustee shall further advertise said sale by erecting suitable sign boards on the above described property and by printed hand bills regarding the same and that he be authorized to spend a reasonable sum in whatever methods of advertising as to him may seem necessary.

"It is further ordered that successful bidders for said property shall be required to deposit with said trustee as earnest money, a certified check for at least ten per cent of the amount to be paid for said property; residue to be paid or secured as aforesaid immediately upon approval of said sale by this court.

"It is further ordered that said sales shall be subject to the approval of this court and that said trustee upon conducting same shall forthwith report said sales to this court for its approval.

"Said trustee is authorized to employ an auctioneer to conduct said sales and shall upon approval of court make and execute such conveyance or conveyances as may be necessary to fully invest title to all said real estate in said purchasers."

On November 4, 1908, relator filed an affidavit for an appeal from the decree and his appeal was denied. By virtue of the decree the trustee presently advertised the described real estate, putting the sale on November 16, 1908; and on November 12th, relator filed here his suggestion for prohibition, challenging the jurisdiction of the circuit court to render the decree ordering a sale.

The first and main proposition discussed by counsel is the right (affirmed on the one side and denied on the other) of the circuit court of the city of St. Louis to retain jurisdiction of the administration of the trust estate by its original decree, entered on the pleadings in the principal case. It will be observed there was a clause in that decree pointedly retaining such jurisdic-

tion.   The trial court evidently held that by virtue of that clause the administration of the whole trust was held in chancery.   Accordingly, all subsequent proceedings are entitled as in that case and are by way of supplemental motions and petitions filed therein—hearings proceeding on mere notice without summons.   The argument of respondent runs, first, that the circuit court on its equity side had inherent jurisdiction over the subject-matter of trusts, therefore (they argue) the decree was well enough; second, that the will of the grandmother (witness the clause heretofore quoted) contemplated that the trust, in so far as power was given to the trustee to sell real estate, should be administered under the supervision of a chancellor; third, that the original decree was entered by consent; and, fourth, that it was not appealed from.   Hence, on one or all said grounds, it is immune from collateral attack.

But we are of opinion that learned counsel, through inadvertence, argue unsoundly in that behalf and that the preliminary rule in prohibition should be made absolute.   This, because:

I.   (a)   Conceding that trusts and their administration are an ancient head of equity jurisdiction, yet in Missouri jurisdiction of the subject-matter of a concrete case in equity or law is only acquired by a court through pleadings filed, process issued or appearance entered, and decrees entered within the lines of the issues framed by pleadings.   At the very old common law, pleadings were oral and some court officer framed issues from these oral complaints.   So, when Samuel judged Israel, or some Calif dispensed justice in Bagdad, or some Jewish king sat in judgment at the gates of Jerusalem, no form of pleadings was necessary to the hearing of a controversy, and questions of jurisdiction were scarce and of little or no bother.   But in modern jurisprudence, a court remains passive until issues are framed in accordance with written law and

their judgments must respond to such issues. A judgment is "the sentence of the law upon the record." It is the application of the law to the facts and pleadings. Any other view would be illogical and tend to confusion and chaos in the administration of justice. [Black v. Early, 208 Mo. l. c. 313, and cases cited.] Speaking to the point, we quote with approval from a sound authority: "The judicial power can be set in motion in civil matters only by some person—using the word in its broadest sense—in a case against another person. The courts cannot, *ex mero motu*, set themselves in motion, nor have they power to decide questions except such as are presented by the parties in their pleadings. The parties, by their attorneys, make the record, and what is decided within the issue is *res adjudicata;* anything beyond is *coram non judice* and void." [Andrews' Stephen's Pleading (2 Ed.) p. 34; see, also, Reynolds v. Stockton, 140 U. S. 254.]

To the same effect are our own cases. "The subject-matter of a suit," says MACFARLANE, J., in Hope v. Blair, 105 Mo. l. c. 93, "when reference is made to questions of jurisdiction, is defined to mean 'the nature of the cause of action and of the relief sought.' [Cooper v. Reynolds, 10 Wall. 316.] 'Jurisdiction may be defined to be the right to adjudicate concerning the subject-matter in a given case. To constitute this there are three essentials: First. The court must have cognizance of the class of cases to which the one adjudged belongs. Second. The proper parties must be present, and, third, *the point decided must be, in substance and effect, within the issue.'* [Munday v. Vail, 34 N. J. Law 422.] A court may be said to have jurisdiction of the subject-matter of a suit when it has the right to proceed to determine the controversy or question in issue between the parties, or grant the relief prayed. What the controversy or issue, in any case, is, can only be determined from the pleadings. When the court has cognizance of the controversy, as it appears from the

pleadings, and has the parties before it, then the judgment or order, which is authorized by the pleadings, however erroneous, irregular or informal it may be, is valid until set aside or reversed upon appeal or writ of error."

Referring to the foregoing, let it be admitted, also, for the purposes of the case at bar, that "the question of jurisdiction must be tried by the whole record." [Hope v. Blair, *supra*, 1. c. 94; Adams v. Cowles, 95 Mo. 506.]

Let it be further admitted, *arguendo*, that the scope of the pleadings and issues in a lawsuit may now and then be somewhat enlarged beyond the strict letter of the pleadings by the construction put upon them by court and counsel at the hearing, and that such theory will bind parties litigant not only on appeal but on a question of *res adjudicata*. [Bragg v. Railroad, 192 Mo. 1. c. 358; Donnell v. Wright, 147 Mo. 1. c. 646-7.]

Yet none of these admissions aid respondent in this case. There have been presented to us the admissions of fact and a running colloquy between court and counsel at the hearing of the principal case. It is claimed that said admissions and colloquy are part of "the whole record." Conceding (without determining) that fact, yet we find the admissions and observations made in the colloquy are strictly responsive to the plain issues framed by the pleadings in the original case and nothing else. Those issues we have stated. Briefly, they are the appointment of a new trustee and putting that trustee in the shoes of the old one—(*i. e.*, vesting him with the title to the real estate devised in trust by the grandmother's will). Such being the simple, sharp and only issues, the decree invoked thereby should have contented itself with deciding them, and, having set them at rest by the appointment of a new trustee and providing for his bond, and having invested him with title, the power of the court in the subject-matter of that particular suit was exhausted and at

end.   This certainly is so unless we adopt the heresy
that a court, *sua sponte,* may hold a trust estate in its
grasp for all purposes of administration under some
droll notion that once in chancery for any purpose
whatsoever a trust estate is always in chancery for all
purposes whatsoever.

A general doctrine, in point, is thus stated: ''Upon
the entry of a final order *or one which becomes final by
operation of law,* the jurisdiction of the court in the
suit in which such order is entered is exhausted, and
further proceedings therein may be prohibited.'' [16
Ency. Pl. and Pr., 1115.]

(b)  It is argued that the will of the grandmother
contemplated that a court of equity might be invoked
to approve a sale of real estate by the trustee under
the powers donated to him.   But, in this connection,
it must also be remembered that the grandmother's
will, *ex vi termini,* contemplated that a *person,* not a
*court,* should manage the trust.   The finger can be put
on nothing in that will even squinting at a wish on the
grandmother's part that the execution of the trust
raised should be subjected to the traditional delays
and expenses of an administration in a court of chan-
cery.   The direction in that will that a sale of any of
the trust real estate should not be effectual without the
approval of a court, falls very far short of bespeaking
the general judicial exercise of the large power of ad-
ministering the trust through orders and directions of
court.   Not only so, but the subject-matter of  the
*corpus* of the trust estate, the subject-matter of the
powers donated by the will, and the subject-matter of
the administration of the estate under those powers,
were not brought into court in the original proceeding
for the purpose of administration then or thereafter;
so that we are not called upon to decide whether the
administration of that trust could be taken from the
shoulders of a trustee selected by testatrix, or his
successor named by the court, and put upon the should-

ers of a chancellor in a direct proceeding leveled at that end.

(c)  It is next argued that the original decree was by consent, and, finally, that no appeal was taken, therefore, the decree was effectual to hold the trust estate in administration.  But if the chancellor, as we have held, reached out his arm too far and grasped a jurisdiction not within the issues, then that part of the decree outside the issues became *coram non judice* and void.  In that view of the case no appeal was necessary, and the void part of the judgment is subject to collateral attack.

Moreover, while it seems that counsel, "O. K.'d" the decree, whatever that may mean, yet we cannot agree to the doctrine that counsel, ostensibly merely employed in the matter of an appointment of a new trustee to administer a trust estate and to invest that new trustee with title to the estate, thereby and without more held a warrant of attorney from their client to confer jurisdiction on the court to administer the whole trust after the appointment of the new trustee, and all this by placing the hieroglyphic cryptogram, "O. K.," on a decree prepared for entry presumably by counsel, whether in court or out does not appear. To put jurisdiction on counsel's "O. K." is to stand it on an apex instead of a base, to rest it on a sign or symbol, rather than on the pleadings, the issues and the evidence.

II.  The decree of sale, singularly enough, is based on a petition directed to the *avoidance* of any sale whatever, through the expedient of borrowing money to tide over the pressing emergency confronting the trustee in his stewardship.  That decree, in any event, is so foreign to the application made that it could only stand on the broad ground that the whole trust estate and its administration were already held in the hollow of the hand of the chancellor by force of the original

decree, and that he could proceed, of his own motion, to administer the details of the trust. As we have already held that the chancellor had no such jurisdiction in this case, it would be unprofitable to consider the decree of sale from the viewpoint of standing on its own legs; because, the jurisdiction to order that sale being referred back to the clause in the original decree retaining jurisdiction of the whole trust, therefore, as that is the stem on which it grew, when that stem is cut down, its support is taken away and it falls to the ground.

Other questions are discussed with vigor and learning by counsel for respondent, but we deem them not vital to the deciding question in the case.

Let the preliminary rule in prohibition be made absolute and the final writ go. We will not adjudge costs against Judge Muench. Let the relator pay them. It is so ordered. *Valliant, C. J., Gantt, Fox, Woodson* and *Graves, JJ.,* concur; *Burgess, J.,* dissents.