THE STATE v. PHILIP DAMICO, Appellant.—4 S. W. (2d) 424.

Court en Banc, March 17, 1928.

*Ralph S. Latshaw, Jr.,* for appellant.

*North T. Gentry,* Attorney-General, and *James Donald Purteet,* Special Assistant Attorney-General, for respondent.

GRAVES, J.—This case has had a somewhat checkered career. Rumaging through the files in Division, we find (1) an opinion affirming the judgment of the Juvenile Court of Jackson County, filed May 26, 1926, and (2) an opinion filed on December 20, 1926, transferring the case to the Kansas City Court of Appeals. The case came to Court en Banc upon the latter opinion, and said opinion being rejected, the cause was re-assigned for an opinion. The chief contest here (now a dead issue in the cause, with the views we have of the record, and the law) was relative to the jurisdiction of this court on appeal, the contention of the State being that all appeals from the juvenile courts should go to the proper court of appeals. In the instant case Damico was tried before the Juvenile Court of Jackson County, more properly speaking a division of the Circuit Court of Jackson County assigned to try and hear juvenile cases.

A very short outline of the facts will suffice. Philip Damico, the appellant herein, was on January 27, 1925, indicted by the grand jury of Jackson County for the crime of manslaughter, said crime, being in said indictment, charged to have been committed on January 2, 1925. Note the dates, because there is no dispute as to these dates. Their materiality will later appear. Plea of not guilty was entered and the criminal cause set for trial on February 2, 1925. After the setting of the case, and on January 29, 1925, appellant filed motion to transfer the cause to the juvenile division of the circuit court. This motion was sustained, and trial of the cause set for February 11, 1925, in said court. On February 10, 1925, an information was filed in the juvenile court, attempting to charge defendant, Damico, as a delinquent child. Appellant was tried, beginning on February 10, 1925, and ending on 13th day of February, 1925, with a jury verdict, as follows:

"We the jury find the defendant Philip Damico guilty of manslaughter as charged in the information.

"WILLIAM FRAZIER, Foreman."

The information was amended at the conclusion of the trial, so as to more clearly show that the information was charging delinquency, but this is not now a material issue. The information, before the amendment made at the last of the trial, shows that it was an attempt to plead under the juvenile law, in that it is predicated upon the alleged fact that Damico "was and is a child *under the age of eighteen years,* not now an inmate of any state institution or any institution incorporated under the laws of the State for the care and correction of delinquent children." One of the serious troubles in the case

lies in the implied admission in the information, that Damico was over seventeen years of age. But for our statement, we need not go into these matters from a speculative view. The juvenile court fixed the defendant's age in the finding and judgment, thus:

"The court having heard the evidence and being fully advised in the premises, finds that said Philip Damico is a minor child of the age of seventeen years, or to be exact, that said Philip Damico was seventeen years of age on the 16th day of September, 1924. The court was advised that said Philip Damico is a delinquent child within the meaning of the statutes in such case made and provided, and the court orders that the said Philip Damico be committed to the Missouri Reformatory at Boonville, Missouri, until he becomes twenty-one years of age."

There were two of these cases in Division Two, at about the same time, i. e. this present case, and State v. Gregori, passed upon by Court en Banc on February 4, 1928, 318 Mo. 998. This case and the situation created by it we reserve for the opinion. We go to the opinion with the admitted status of the record, to the effect that defendant was more than seventeen years of age when he committed the act charged to be manslaughter. Further details are left to the opinion.

Before going to the simple legal question involved we give a few additional facts. The circuit court transferred the case to the juvenile court, or the juvenile division of the circuit court, on January 31, 1925, by sustaining defendant's motion asking for such transfer on that date, and making the order of transfer. The grand jury indictment against defendant was then pending in the circuit court. The record sent to this court, but not printed, shows that the Juvenile Division of the Circuit Court of Jackson County, convened in its regular January term for the year 1925 on January 12, 1925, and continued until after the judgment and sentence herein, and also until after the granting of the appeal herein.

This record shows the dismissal of the indictment found by the grand jury as aforesaid, by order of the juvenile division of the circuit court, sitting as a juvenile court, on February 11, 1925, or eleven days after the transfer of the cause to the juvenile court, or juvenile division of the circuit court. We note this because the real question is the jurisdiction of the juvenile court to proceed in the cause at all, and the effect of its orders and judgments.

The laws relative to delinquent children are, and have been for some years, divided into two classes, i. e. (1) laws applicable to counties of less than 50,000 population, and (2) laws applicable to counties of more than 50,000 population. Treating the city of St. Louis as a county, as it must be treated, because the law so says, both

St. Louis and Kansas City (Jackson County) fall within the second class, supra. In 1909 there were two classes of counties in the second class, supra. [Chapter 35, Articles VI and VII.] Article 6 related to counties of over 50,000, and Article 7 to counties of 100,000 and less than 150,000. However in 1911 (Laws 1911, p. 186) these two articles (VI and VII) were repealed, and we had the real origin of the present law on that class of counties. Originally a delinquent child was one under sixteen years, but this Act of 1911 changed it to *under* seventeen years. We then had harmonious law covering both classes of counties, i. e. (1) counties under 50,000 population, and (2) counties of over 50,000 population. [Sec. 1135, Chap. 11, Art. V, R. S. 1919, and Sec. 2591, Chap. 21, Art. VI, R. S. 1919.] The several laws could be traced, in some ways, further back than we have done. We will only say that the foundation of Chapter 11, Article V, Revised Statutes 1919, is found in the Act of 1917 (Laws 1917, p. 95 et. seq.), which act repealed the Act of 1913 (Laws 1913, p. 148), the old act giving the probate courts jurisdiction). [See Laws 1917, p. 201, sec. 19.] This Act of 1917, supra, is largely the present law as to counties of less than 50,000 inhabitants.

At this point, in both classes of counties, the law defined a delinquent child as one *under* the age of seventeen years. Upon this question there was harmony throughout the State in these laws. Not content with a good situation, some one procured an amendment in 1923 (Laws 1923, p. 153 et seq.), by which a delinquent child, in counties of over 50,000 inhabitants, was defined as one *"under the* age of *eighteen* years." Thus we had two definitions of a delinquent. In counties of under 50,000 inhabitants a delinquent was one *under* seventeen years of age. In counties of over 50,000 inhabitants (which covered both St. Louis and Jackson County) a delinquent was one *under* the age of *eighteen years*. This amendment of 1923, supra, this court en banc held void and violative of the Constitution in State v. Gregori, in an opinion filed on February 4, 1928. Under this ruling the juvenile court, or the Juvenile Division of the Circuit Court of Jackson county, never had any jurisdiction to try the appellant herein on the information filed therein. According to the court's own finding, set out supra, this appellant was *over* the age of seventeen years, when the alleged offense of manslaughter was committed. The juvenile court was wholly without jurisdiction to make any order in the case, or to enter any judgment therein. The information did not show defendant to be a delinquent child. The information should have charged that Damico was under seventeen years of age. The face of the information showed no jurisdiction in the juvenile court. Its order dismissing the indictment was a nullity, and thus there is left pending in the circuit court (Criminal Division) the indictment

found by the grand jury, in which defendant stands charged with the crime of manslaughter. From it all, it is clear that the judgment and all proceedings in the juvenile court are void, and said judgment is reversed, and the defendant remanded to the Circuit Court of Jackson County (Criminal Division), to be tried upon the indictment, which the juvenile court, acting beyond its jurisdiction and power, dismissed. It is so ordered. All concur.