**STATE of Missouri, Plaintiff-Respondent,**

v.

**Lily TAYLOR, a child under the age of seventeen years, Defendant-Appellant.**

No. 7768.

Springfield Court of Appeals.

Missouri.

April 13, 1959.

Motions for Rehearing or Transfer Overruled May 15, 1959.

N. I. Pilkinton, pro se.

Richard D. Moore, West Plains, for plaintiff-respondent.

RUARK, Judge.

On February 25, 1958, the prosecuting attorney of Howell County (a third-class county) swore to and presumably filed with the circuit clerk his information or petition as follows:

"Richard D. Moore, Prosecuting Attorney, within and for the County of Howell, and State of Missouri, who being duly sworn upon his oath, informs the court that one Lillie Taylor, who is then and there a minor of the age of nine years, is a neglected child within the meaning of the statutes of the State of Missouri and within the provisions of the Revised Statutes of Missouri, 1949, Section 211.031 [V.A. M.S.], in that the parents of said minor, namely, Mr. and Mrs. N. I. Pilkinton, neglect and refuse to provide proper education which is required by law for said minor and willfully refuse to send said minor to school, *and did not then and there provide the equivalent educational training at home or by private tutor.*

"The full name of said minor is Little (sic) Taylor. The birth date of said minor is January 16, 1949, and the residence of said minor is West Plains, Missouri. The names and residence of her parents are Mr. and Mrs. N. I. Pilkinton of West Plains, Missouri.

"Wherefore, the said Richard D. Moore, prays the Court that the said Lillie Taylor together with her mother and father, Mr. and Mrs. N. I. Pilkinton, be brought before the Juvenile Division of the Circuit Court to show cause, if any there be, why said minor should not be adjudged a neglected child under the law relating to neglected children.

"Subscribed and sworn to before me this 25th day of February, 1958.

(Seal) /s/ Willard M. Hunter,
Clerk of the Circuit Court."

On July 30, 1958, the prosecuting attorney was granted leave to, and presumably did, amend by interlining the words italicized above. The only way the juvenile officer appears in the record is as a witness.

After trial of the issues the court rendered judgment as follows:

"The Court finds that said child is neglected as alleged in the petition; that the facts set out in the petition are true; that Mr. and Mrs. N. I. Pilkinton have willfully failed and refused to send the child, Lily Taylor, to school or provide proper education for said child and when said parents could have done so. Said child, Lily Taylor, made a ward of this court and committed to the care, custody, control and supervision of the Director of Welfare of Howell County, Missouri, and said Director of Welfare authorized to commit the child to the custody of its parents or any other proper home selected by said Director of Welfare, provided said child shall attend some public school."

The case is here on the appeal taken by the mother and stepfather in behalf of the child.

Although neither of the briefs raises the question, we are, at the outset, confronted with a problem of jurisdiction which appears on the face of the record. Although appellant has not raised the question, we regard it as our duty to consider it *sua sponte*.[1]

According to the record, the proceedings were commenced by the filing of a petition or information by the prosecuting attorney. By Section 211.360, RSMo 1949, V. A.M.S., it was made the duty of the prosecuting attorney in third- and fourth-class counties to initiate a proceeding in respect to neglect or delinquency by the filing of a verified written petition with the clerk of the juvenile court. The sections immediately following provide for the procedure in regard to summons and notice, hearing and judgment. In 1955 this section was repealed and two new sections were enacted (Laws of 1955, p. 671, Sections 211.360 and 211.390, 1955 Cumulative Supplement). Section 211.360 retained in, and enjoined upon, the prosecuting attorney the duty of instituting the proceeding by his written and sworn petition, but it omitted certain salary provisions present in the old statute. A new section 211.390 dealt with commitment.

But in 1957 the legislature repealed practically all of the juvenile procedural code, including the two sections above named, and enacted a new code (see Laws of 1957, p. 642). The purpose of this code was expressly stated to be "to facilitate the care, protection, and discipline" of children who come within the jurisdiction of the juvenile court (Section 211.010, Laws of 1957; Section 211.011, V.A.M.S.). The new code provided for the appointment of juvenile officers, fixed their qualifications, set their salaries, and prescribed their duties. It also set forth the procedure to be followed in initiating inquiry or proceedings, summons, notice, subpoenas, hearing, et cetera. Section 211.080, Laws of 1957, p. 647 (Section 211.081, V.A.M.S.), is as follows:

"Whenever any person informs the court in person and in writing that a child appears to be within the purview of applicable provisions of section 211.031 of this act, the court shall make or cause to be made a preliminary inquiry to determine the facts and to determine whether or not the interests of the public or of the child require that further action be taken. On the basis of this inquiry the juvenile court may make such informal adjustment as is practicable without a petition *or may author-*

1. McMenamy Investment & Real Estate Co. v. Stillwell Catering Co., 267 Mo. 340, 184 S.W. 467, 468; Robertson v. Robertson, Mo.App., 163 S.W. 266, 269; Hoover v. Abell, Mo.App., 231 S.W.2d 217, 233; Section 512.160, RSMo 1949, V.A.M.S.; Supreme Court Rules 3.23 and 3.27, 42 V.A.M.S.

*ize the filing of a petition by the juvenile officer."*

Immediately thereafter follows the section (211.091) which sets forth what the petition shall contain.

Nowhere in the new act do we find any power or authority in the prosecuting attorney to institute the proceeding. Section 211.390, Laws of 1957, p. 658 (Section 211.-411, V.A.M.S.), provides that he, and certain other officers, shall aid and assist the juvenile officer, but it does not purport to re-endow the prosecuting attorney with the powers set forth in the expressly repealed Section 211.360.

■■ It would seem to us that it was the intention of the legislature to take completely away from the prosecuting officers any direct connection with the juvenile proceeding so as to lessen the "stigma" of being involved in such proceeding.[2] It is our conclusion that, in the words of the eminent authority who reviewed the proposed code while it was yet before the 1957 legislative session:

> "Under the proposed act, prosecuting officials are not authorized to institute juvenile court proceedings, and informations and sworn complaints are eliminated. *Only the juvenile officer is authorized to start the proceedings."* (Our italics)

Weinstein, "The Juvenile Court Concept in Missouri," 1957 Wash.U.Law Quarterly, p. 18, loc. cit. 38; see also p. 39. The court has power to make preliminary inquiry, but the very mention of this preliminary authority emphasizes the necessity of a formal petition before the court has power to render a judgment which could take a child from its mother. The attachment of mother and child is one of nature's oldest instincts. It is associated with the survival of the race. It is held in tender regard by all religions and by the laws of almost all civilized nations. It is not to be lightly cast aside to make way for any paternalistic sociological theory. Statutes which set up procedures which permit the destruction of the parent-child relationship should be exactly complied with.

■ Under the new code the juvenile judge has great powers, but we think he does not have the authority to dispense with the filing of the petition, or to substitute an unauthorized person to file it. Even a court of general jurisdiction, while engaged in the exercise of a special statutory power, is a court of limited jurisdiction and its powers are confined strictly to the authority given by statute.[3] A juvenile court is a legal tribunal limited in its jurisdiction by the statute law which establishes it, and the deprivation of parental custody must be in accordance with the due process fixed by such statutes.[4] Jurisdiction to render a judgment is conferred only by the filing of a petition.[5] And a judgment, rendered in a civil, criminal or juvenile case, without a valid petition, information or affidavit, as the case may be, which is a statutory requirement for commencement of the proceeding, is void for the reason that the court has no jurisdiction.[6]

Accordingly we are of the opinion that the judgment in this case was void and must be reversed. It is so ordered.

2. See Rappeport, "Determination of Delinquency in Juvenile Court," 1958 Wash. U.Law Quarterly, p. 123.

3. State ex rel. Kansas City v. Public Service Commission, 362 Mo. 786, 244 S.W.2d 110.

4. State v. Couch, Mo.App., 294 S.W.2d 636; Ex parte Parsons, Mo.App., 232 S.W. 740, 742.

5. State ex rel. White v. Swink, 241 Mo. App. 1048, 256 S.W.2d 825, 831; State ex rel. and to Use of Merino v. Rose, 362 Mo. 181, 240 S.W.2d 705.

6. State v. Damico, 319 Mo. 440, 4 S.W.2d 424; Noll v. Alexander, Mo.App., 282 S.W. 739, 741; Jensen v. Wilson Tp., Gentry County, 346 Mo. 1199, 145 S.W.2d 372; State ex rel. McManus v. Muench, 217 Mo. 124, 117 S.W. 25, 29.

STONE, P. J., and McDOWELL, J., concur.

On Motions for Rehearing or Transfer

PER CURIAM.

Both parties have filed motions for rehearing or transfer. The suggestions accompanying the motion filed by the "State of Missouri, Plaintiff-Respondent," aver error on our part in assuming that the county or circuit had a legally appointed juvenile officer. The record shows that the prosecuting attorney called a witness Napier to the stand and asked him:

"Q. What is your occupation? A. I am juvenile officer of the county."

He then asked the witness:

"Q. In your official capacity as juvenile officer of Howell County did you have occasion to talk to Mr. and Mrs. N. I. Pilkinton * * *?"

The witness then related a series of discussions with the mother and stepfather of the child extending over the "last school term."

Be that as it may, we have *not* held that the same person who holds the position of prosecuting attorney could not be appointed as juvenile officer and serve as such (although the record does not disclose any such appointment in this case). But, if such were the case, the petition must be filed by that person *as juvenile officer* and not (as was done here) in the official capacity and under the oath of prosecuting attorney.

The motion filed by the stepfather on behalf of the child demonstrates an entire misconception of the principal question involved. This is a proceeding which directly concerns the present and future welfare of a child. The vindication of the stepfather in his quarrels with various school and county authorities is incidental. This is the second time these quarrels, with a little girl as the innocent in-between, have reached this court. (See State v. Pilkinton, Mo.App., 310 S.W.2d 304.) In both instances the cases have been reversed in spite and not because of any record the stepfather was able to make in the lower court or any brief he has filed in this court. Should this controversy again erupt in such manner as to affect directly the welfare of this innocent girl, it is to be hoped that she may have the benefit and protection of more competent "counsel."

The motions are overruled.