**STATE of Missouri ex rel. Rebecca BALCH, Relator,**

v.

**Honorable David DALTON, Judge, Juvenile Court, Lincoln County, Respondent.**

No. 63262.

Supreme Court of Missouri, En Banc.

Feb. 9, 1982.

Thomas C. Boyle, Clayton, for relator.

William F. Brighoff, Burkemper & Brighoff, Troy, for respondent.

BARDGETT, Judge.

In this original action in prohibition relator seeks to prohibit respondent from proceeding further in an adoption case because of lack of jurisdiction. Relator contends that the St. Louis County Juvenile Court acquired jurisdiction under Chapter 211, RSMo 1969,[1] and has continuing exclusive jurisdiction with reference to the custody of the child in question. This Court issued its preliminary writ.

J.C.B., the infant girl who is the subject of the adoption proceeding, was born to relator in St. Louis County on February 3, 1972. Within about two weeks or so after the birth, relator went to the St. Louis County Juvenile Court and told the court that she was financially unable to care properly for the child and sought help from that court. The juvenile court, on February 28, 1972, entered a consent decree with the written permission of both the natural mother and the juvenile officer in which it found J.C.B. in need of proper care and supervision under § 211.031,[2] *temporarily* transferred custody of the three- and one-

---

1. All statutory references are to RSMo 1969 unless otherwise indicated.

2. Although the decree cites § 211.030 as the applicable section, because of the finding made by the juvenile court it appears that recitation of the incorrect section was merely a typographical error on the preprinted form.

half-week-old infant from relator to St. Louis County Family Services for placement in a foster home, and ordered St. Louis County to pay for the support and maintenance of the child. All these provisions were by the express terms of that decree subject to further order of the juvenile court. On or soon after the day the decree was entered, St. Louis County Family Services placed the infant girl in a family home with a couple named W. and she has lived continuously with that family since then.

Several years later the W. family moved from St. Louis County to Lincoln County and, with the permission of St. Louis County Family Services, took the child with them. Thereafter, Lincoln County Family Services, by arrangement with St. Louis County Family Services, assumed supervision of the foster care which the family home was providing.

On February 25, 1980, both Lincoln and St. Louis County Family Services and the W. family entered into a long-term, foster-care agreement. The parties agreed that foster care would be provided by the same family home until the child's majority, that Family Services would provide payment to the W. family and other support through the foster-care program, that relator's parental rights were not being terminated, and that the natural mother could visit her daughter a maximum of two times per year. Although relator was solicited to become a party to the agreement, she declined to do so and did not sign it. On oral argument it was stated by relator's attor-

ney and not denied by respondent's attorney that relator has been utilizing her Social Security disability payments to pay, in part, for the care of the minor for the past several years.

About one year later, on February 13, 1981, the W. family filed a two-count petition in Lincoln County Juvenile Court, seeking termination of relator's parental rights, legal custody for the purpose of adoption of the infant by the W. family,[3] and adoption of the child. A guardian ad litem was appointed and relator was served with a summons in the pending suit. Relator filed a motion to dismiss the action on the basis that the petition failed to state a claim on which relief could be granted, that J.C.B. was under the jurisdiction of the St. Louis County Juvenile Court, and that relator had not wilfully abandoned or neglected to provide the infant with proper care and maintenance for a one-year period. Respondent overruled relator's motion to dismiss.

Respondent, citing *State v. Taylor*, 323 S.W.2d 534 (Mo.App.1959), alleges that the St. Louis County Juvenile Court never had jurisdiction over J.C.B. because no petition was filed and that jurisdiction of a juvenile court over a child under Chapter 211 can be obtained only by the filing of a petition by a juvenile officer. Respondent also argues that, even if the juvenile court had jurisdiction, Lincoln County Juvenile Court has concurrent jurisdiction to entertain the two-count adoption petition under *State ex rel. Dzurian v. Hoester*, 494 S.W.2d 67 (Mo. banc 1973), and *State ex rel. Catholic Charities v. Hoester*, 494 S.W.2d 70 (Mo. banc

---

**3.** As was stated in *In re Trapp*, 593 S.W.2d 193 (Mo. banc 1980):

> We think that § 452.485 ... does not confer a right on foster parents having physical custody of a child to intervene in a custody proceeding based on allegations of neglect or abandonment of the child by the natural parents. The provision is designed to confer certain powers on the circuit court, but it does not confer a right to litigate the issue of neglect on persons who are not interested under the terms of ... Chapter 211, RSMo 1978.

*Id.* at 205. The same is true when the foster parents, who are only retaining physical custody as agents for Family Services, bring an ac-

tion to terminate a natural parent's parental rights and gain legal custody of the infant. The proceeding tends to become adversarial as between the natural mother and persons seeking to adopt when the only concern should be whether the natural parent is fit or unfit, and

> [t]he presence of the foster parents in this action would tend to interject the false issue of the fitness of the foster parents to have custody of the children.... The General Assembly has not authorized the removal of children from the custody of their parents on the ground that the children would be "better off" in another home.

*Id.* at 205–06.

1973). The cases relied on by respondent are distinguishable from the instant case.

In *State v. Taylor, supra,* the prosecuting attorney filed an information alleging that a minor girl was neglected by her parents because they refused to send her to school and provide her with a proper education. The juvenile court, acting on this petition, made the child a ward of the court and committed the infant to the care, custody, control, and supervision of the Director of Welfare of the county. The mother and stepfather of the infant appealed on her behalf and the court of appeals reversed. The concerns expressed by the appellate court are important as they demonstrate that a dispute existed and the need for a petition to delineate issues.

The Taylor child was being taken from the custody of her natural mother without the mother's consent. Because "[t]he attachment of mother and child is one, of nature's oldest instincts . . . , [i]t is not to be lightly cast aside to make way for any paternalistic sociological theory." 323 S.W.2d at 537. The court went on to say that "it was the intention of the legislature to take completely away from the prosecuting officers any direct connection with the juvenile proceeding so as to lessen the 'stigma' of being involved in such proceeding." *Id.* (footnote omitted). Thus, to protect the parent-child relationship when the parent does not want to lose custody of the infant and to lessen the stigma of the proceeding, the court of appeals was of the opinion that under Chapter 211 only the juvenile officer could file the petition which invoked the jurisdiction of the juvenile court. These concerns, however, are not present in the instant case.

Similarly, the posture of the instant case distinguishes it from *State ex rel. Dzurian v. Hoester, supra,* and *State ex rel. Catholic Charities v. Hoester, supra.* In both those cases, parental rights had been terminated *prior* to the institution of adoption proceedings. No natural person had any right to legal custody of the children who were, because of the prior termination of parental rights, adoptable. This Court held that the adoption suits were therefore properly filed in the juvenile court of the county where the prospective parents or children resided.

The legislature recognized that someone must furnish care for children and provided juvenile courts with a variety of options to facilitate the care and protection of children when they are brought within the jurisdiction of juvenile courts. In this case, the natural mother soon after her daughter's birth realized that she could not care for the infant at that time and sought the help of the juvenile court in the county where she and her daughter resided. The St. Louis County Juvenile Court properly responded to the needs of the three- and one-half-week-old infant and with the written consent, which also amounts to a request in this case, of the natural mother and juvenile officer, the court ordered temporary transfer of legal custody of the child to St. Louis County Family Services for the purpose of supervision and placement of the infant girl in a family home so she could be cared for properly. In addition, the juvenile court required the county to pay for support and maintenance of the child.[4]

The St. Louis County Juvenile Court, with the newborn child brought before it by her natural mother, had the right to act on the plea of relator and recommendation of the juvenile officer and indeed the duty to do so as well. The consent decree, presented to the court for its order, represented a joint effort by relator and the juvenile officer. With no evidence that anyone other than relator had custody rights involved, all interested parties were before the juvenile court. Consequently, the information of the mother, recommendation of the juvenile officer, and presentation by both of the consent decree to the court were sufficient to confer jurisdiction on the juvenile court. The court found specifically that the situation of the child brought her within its

---

4. The decree of the St. Louis County Juvenile Court cannot be characterized as an informal adjustment. It went beyond what an informal adjustment would permit. *See, e.g.,* Rule 113.-01.

**298**

jurisdiction under § 211.031. In this context, the St. Louis County Juvenile Court acquired jurisdiction over this infant.

What respondent would have this Court do is to find that the St. Louis County Juvenile Court had no jurisdiction over this child. If this Court were to so find, then placement by St. Louis County Family Services of the infant in this family home would have been illegal. Neither party in this action, however, contends that legal custody of the child in Family Services and physical custody in this family home are unlawful. In fact they are not, but only because of the decree of the St. Louis County Juvenile Court.

In the context of this case, the St. Louis County Juvenile Court had the power to act and its order is valid. Furthermore, the St. Louis County Juvenile Court retained expressly in the consent decree the power, under § 211.041, to modify or amend its custody and maintenance decree. No additional orders have been issued by that court with respect to its original decree. Under this decree, unlike *Dzurian* and *Catholic Charities*, the natural mother's parental rights were not terminated; custody of J.C.B. was merely transferred temporarily. And the retention of parental rights in relator was recognized by the long-term, foster-care agreement which she did not sign. In fact, relator's parental rights were preserved by the juvenile court's continuing jurisdiction reserved expressly in the decree pursuant to § 211.041 in this case arising under § 211.031. Any proceeding attempting to modify the consent decree must be brought in the St. Louis County Juvenile Court. The custody of the infant, reference those matters reserved in the consent decree as under the continuing jurisdiction of the juvenile court, is within the exclusive jurisdiction of the St. Louis County Juvenile Court and respondent is prohibited from making any orders in conflict therewith. The preliminary writ is made absolute.

All concur.