In the Interest of G__ C__ P__, Jr., R__ L__ P__ and A__ M__ P__, minors under 17 years of age.

No. 13574.

Missouri Court of Appeals, Southern District, Division Three.

Oct. 31, 1984.

Janet K. Brown, Greenville, for appellant parents.

No appearance for respondent juvenile officer.

PREWITT, Chief Judge.

Pursuant to a petition filed by the acting juvenile officer, the trial court terminated the parental rights of the parents to three children. See §§ 211.442—211.492, RSMo 1978 and RSMo Supp.1983.[1] The children were two males, born March 19, 1977, and June 26, 1978, and a female, born January 18, 1980. Both parents appeal.

In our review we give due regard to the trial court for its ability to assess the credibility of the witnesses and we are to sustain the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Juvenile Office of Cape Girardeau County v. M.E.J.*, 666 S.W.2d 957, 960 (Mo. App.1984). Our primary concern is the best interest of the children, within the confines of the applicable statutes. Id.

We should exercise the power to set aside the judgment on the ground that it is against the weight of the evidence only with caution and a firm belief that the decree or judgment is wrong. *In Interest of C.L.M.*, 625 S.W.2d 613, 614 (Mo. banc 1981).

Each parent's rights were terminated on three independent grounds: "(1) failure to rectify conditions [See § 211.447.2(2)(i)b]; (2) mental deficiency which renders the natural parents unable to form an intent or act knowingly, which said condition is found to be irreversible [See § 211.447.2(2)(g) ]; and (3) neglect [Apparently § 211.447.2(2)(b) ]."

The parents contend that none of these grounds were proven by "clear, cogent and convincing evidence". See § 211.447.2(2). Of course, if any one condition was shown as to a parent, that suffices to terminate that parent's parental rights. See *In In-*

*terest of Gowen*, 610 S.W.2d 319, 320 (Mo. App.1980).

To terminate parental rights, there must be strict and literal compliance with the statutes and those seeking to terminate them have the burden of proof. *In Interest of A.R.S.*, 609 S.W.2d 490, 491 (Mo.App.1980). It is only when grave and compelling reasons exist that parental rights should be severed; the test is not whether the children would be better off in another home. Id.

Section 211.447.2(2)(g) provides for termination of parental rights where:

"The parent has a mental condition which:

a. Renders him unable to form an intent or act knowingly; and

b. Is shown by competent evidence to be permanent or that there is no reasonable likelihood that the condition is reversible, and such parent has substantially and repeatedly neglected the child or failed to give the child necessary care and protection".

A clinical psychologist testified on the parents' mental capacities. His qualifications to express such an opinion have not been challenged. He said the mother suffers from mental retardation which prevented her from forming an intent or acting knowingly. This was obviously permanent and there was evidence that she had failed to give the children necessary care and protection. Thus, there was at least one ground to terminate her parental rights.

The only evidence on the father's mental condition was also given by that psychologist. He said the father could form an intent or act knowingly. The father's testimony supports this conclusion.

We next discuss the condition for termination of parental rights contained in § 211.447.2(2)(i)b, set forth below.[2] The

1. Hereafter all statutory references are to RSMo Supp.1983.

2. Section 211.447.2(2)(i)b states: "The custody of the child has not been with his parents for six months or longer, or the child has been under the jurisdiction of the court for one year or

children were taken from the parents on May 21, 1980, apparently by court order. Then, as now, the parents were married to each other and living together. Although we do not have the petition seeking that order or the order before us, there was testimony on the reason the children were removed from the parents. It was "the neglecting conditions in the home and the suspicion, which was a strong suspicion, of possible abuse."

The conditions of the house on May 21, 1980, were described as "substandard". A witness said the house "was a very small shack-like structure. Clothing was piled approximately in some places in the home, well, probably two and a half feet, you know, big piles of clothing. One of the floors was pretty bad, some kind of a fiber-board material, things like this. The children were pretty dirty at the time." There was evidence that for some time the children were not kept clean and cleanly clothed and that on at least one occasion that one of them did not receive medical care when it appeared necessary. There was no evidence of intentional abuse.

The trial court found that the condition stated in § 211.447.2(2)(i)b had occurred because of the parents' "mental deficiency". A report of the psychologist in evidence stated that the father had an I.Q. of 87, placing him in the "dull normal range". The psychologist testified that the mother's I.Q. was 56. This placed her in the "mentally defective range of intelligent classification" by one standard and "in the mild mental retardation range of intellectual functioning" by another method of rating. Because of their mental deficiencies, the psychologist testified they could not overcome their "parenting deficiencies".

The evidence showed that although the father might have the mental capacity to acquire necessary parenting skills, he chose instead to rely upon his wife to primarily take care of the children and she lacked the mental ability to properly do so. The record indicates that if he had the desire, the father, with help, might be able to properly care for the children, but he did not have sufficient interest in housekeeping and care of them. Various agencies had worked with the parents for some time before and after the children were taken, and while improvements were made, they were not consistently maintained. Although the conditions of their house improved, at least for a period, the long term prospects of the children's care being adequate were not good.

Here we think the trial judge's opportunity to see and hear the parents, and consider whether they might rectify their problems as to the care of children, gives him much more of an insight than we would have. Granting deference to his ability to assess the witnesses, we conclude that there was a sufficient basis for the trial court to determine that the conditions which caused the children to be taken from the parents have not and would not be rectified.

The judgment is affirmed.

CROW, P.J., and HOGAN, TITUS and MAUS, JJ., concur.

longer, immediately prior to the filing of the petition to terminate, and the parent has failed, on a continuing basis, to rectify the conditions which formed the basis of the petition filed under section 211.031, and the order entered under section 211.181, and there is reasonable cause to believe that the parent will not, even if given more time, rectify those conditions on a continuing basis, and that the juvenile officer, division of family services or other agency has used reasonable, diligent and continuing efforts to aid the parent to rectify the conditions and provide on a continuing basis a proper home for the child."