**In the Interest of J.F.**

**Norman W. LAMPTON, Guardian ad litem, Appellant,**

v.

**BOONE COUNTY JUVENILE OFFICER, Respondent.**

**No. 67947.**

Supreme Court of Missouri, En Banc.

Nov. 18, 1986.

Norman W. Lampton, Columbia, pro se.

Marjorie Bedrick Tarkow, Columbia, for respondent.

HIGGINS, Chief Justice.

The guardian ad litem of J.F. appeals a judgment which terminated parental rights of an alleged putative father given notice of the proceeding by publication. Appellant challenges the validity of notice by publication in this termination proceeding. Judgment affirmed.

J.F. was born out of wedlock on June 27, 1985. On the day of her birth, her mother, C.F., requested Family Adoption and Counseling Services to assist her in placing her child for adoption. C.F. named one R.G. as the father of the child stating that he was married and had two other children. C.F. indicated that she did not tell the father of the pregnancy because she did not intend to carry the child to term. She also stated that the father worked at a transmission shop and that conception occurred in the Columbia, Missouri, area.

Before initiating proceedings for termination of parental rights, Family Adoption and Counseling Services attempted to locate the named father. The Columbia transmission shops were checked as were telephone directory assistance, the postal service, Child Support Enforcement Unit, and the Department of Probation and Parole. These unsuccessful efforts were presented to the trial court. Notices of the pending termination of parental rights and adoption were published in Boone County newspapers; the named father did not come forward. On January 8, 1986, the court found that the father had been served by publication and was in default, and that the child's best interests would be served by terminating the putative father's parental rights. Termination was ordered accordingly.

Appellant contends that sections 211.442, RSMo Supp.1985, defining the term "parent," and 211.453, RSMo Supp.1985, waiving notice to putative fathers of termination of parental rights proceedings, are unconstitutional because they deny the father's fundamental right to due process. He asserts that the constitutional requirements of due process as guaranteed by the fifth and fourteenth amendments to the U.S. Constitution and art. I, sec. 10, of the Missouri Constitution, are not fulfilled by notice by publication. He asserts also that due process requires that the court appoint an attorney to represent the interests of the father and guarantee that the statutes terminating parental rights are strictly applied.

▆ Courts must, of course, comply with the statutes governing termination of parental rights. *In Interest of G.C.P.*, 680 S.W.2d 429 (Mo.App.1984). The guardian ad litem, however, incorrectly asserts that section 211.447 is relevant to this proceeding. The putative father is not a parent within the definition stated in section 211.-442(3); therefore, the termination of parental rights statutes sections 211.442–211.487 do not apply. Section 211.442(3) defines "parent":

... a biological parent or parents of a child, as well as, the husband of a natural mother at the time the child was conceived, or a parent or parents of a child by adoption, including both the mother and the putative father of a child.

The putative father of a child shall have no legal relationship unless he, prior to the entry of a decree under sections 211.-442 to 211.487, has acknowledged the child as his own by affirmatively asserting his paternity.

The statute excludes from its purview a biological father who has not acknowledged the child as his own by affirmative assertion of paternity. *Id.* The putative father in this instance falls within the statutory exclusion.

In *State ex rel. T.A.B. v. Corrigan*, 600 S.W.2d 87 (Mo.App.1980), an unmarried woman, shortly after the birth of her child, consented to adoption of the child. Although she consented to the termination of her parental rights, she refused to reveal the identity of the infant's father to the trial court. The court found her in contempt and ordered her to be incarcerated until she divulged the father's name. The court of appeals discharged the contempt order because it was based on an erroneous interpretation of sections 211.442–211.492. The father's identity was irrelevant. Citing section 211.442 the court stated that unless the putative father acknowledged the child by asserting paternity he is not a "parent" and therefore is not entitled to notice. The putative father had not asserted paternity so no obligation existed to reveal his identity. *Id.*

In *J.B.B. v. Baby Girl S.*, 611 S.W.2d 359 (Mo.App.1980), the infant's natural mother consented to the termination of parental rights, stated that the father was unknown, and placed the child in the custody of the Missouri Division of Family Services for placement in an approved adoptive home. The putative father had not asserted paternity. The guardian ad litem opposed the child's adoption as violative of the unknown father's due process rights. The court held that the father was not a "parent" as defined by section 211.442(3) and, therefore, was not entitled to notice of the petition for adoption of the child. *J.B.B*, 611 S.W.2d at 362.

■ Appellant's contention that the definition of "parent" in section 211.442(3) is unconstitutional is without merit. The United States Supreme Court has examined the extent to which a natural father's biological relationship to the child affords him due process protections. *See Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Quillion v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978); *Caban v. Mohammed,* 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979). In *Lehr v. Robertson,* 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed. 2d 614 (1983), the court held that where the putative father had never established a substantial relationship with the child, the failure to give him notice of the pending adoption proceedings, despite the state's actual knowledge of his existence and whereabouts, does not violate due process or equal protection. 463 U.S. at 265, 103 S.Ct. at 2995. In *Lehr*, the state of New York maintained a putative father registry where a father could receive notice of an adoption proceeding concerning his child by mailing a postcard to the putative father registry. The father in that case had never supported the child or offered to marry the natural mother and did not enter his name with the putative father registry. Adoption proceedings were commenced by the child's mother and her new husband. The putative father, after adoption proceedings had begun, filed a paternity petition with a New York family court. Several months later when the putative father learned of the adoption proceedings he sought a stay pending the outcome of the paternity suit. The stay was denied. He appealed claiming that the adoption was obtained in violation of his rights under the due process and equal protection clauses of the fourteenth amendment. The Supreme Court held that the due process and equal protection clauses of the fourteenth amendment do not give a putative father an absolute right to notice and an opportunity to be heard before the child may be adopted. 463 U.S. at 250, 103 S.Ct. at 2987. The Supreme Court has stated that "[p]arental

rights do not spring full-blown from the biological connection between parent and child. They require relationships more enduring." *Caban*, 441 U.S. at 397, 99 S.Ct. at 1770.

The laws establishing the rights of the putative father should not be arbitrary, however. *Caban*, 441 U.S. at 414, 99 S.Ct. at 1779. In *Lehr*, the court held that the New York law was not arbitrary in that a wider notice requirement would "merely complicate the adoption process, threaten the privacy interests of unwed mothers, create the risk of unnecessary controversy and impair the desired finality of adoption decrees." 463 U.S. at 264, 103 S.Ct. at 2994.

Statutes denying the status of "parent" and notice to putative fathers who have not affirmatively asserted paternity are not arbitrary. The purpose of the laws providing for termination of parental rights is to ensure a permanent settlement of matters of legal rights to the custody and care of the child as between the natural parents, the child, and the adoptive parent. *In Re M____*, 393 S.W.2d 109, 115 (1965). Where a putative father cannot be located the legal rights of the adoptive parents to the child should not remain in limbo. The statute waives service and permits the action to proceed to a judgment conclusively establishing the legal rights to custody and care of the child.

For these same reasons due process does not require the court to appoint an attorney to represent the interests of the putative father as asserted by the guardian ad litem. The legal rights of the parties are settled by compliance with the relevant statutes. Once the termination procedure has been completed the putative father cannot overturn the judgment and confuse the legal rights of the parties as the guardian ad litem has argued.

The judgment is affirmed.

All concur.