**STATE of Missouri ex rel. L.L.B., Relator,**

v.

**Honorable James L. EIFFERT, Judge of the Circuit Court of Christian County, Respondent.**

No. 16192–2.

Missouri Court of Appeals,
Southern District,
Division Two.

June 19, 1989.

Motion for Rehearing or Transfer to Supreme Court Denied July 12, 1989.

Application to Transfer Denied
Sept. 12, 1989.

Thomas D. Carver, Ivella McWhorter Elsey, Springfield, for relator.

James L. Bowles, Ozark, for respondent.

MAUS, Judge.

### PRELIMINARY ORDER MADE ABSOLUTE

In this original proceeding the unwed mother of an infant seeks to prohibit the enforcement of a portion of a decree entered in an action brought by her father and stepmother to adopt that infant. The Juvenile Division of the Circuit Court denied the adoption. It also found the mother unfit and transferred the custody of the infant to the putative father. The mother seeks to prohibit the enforcement of the latter portion of the decree.

The dispositive facts established by the petition and its exhibits and the answer and its exhibits are as follows. The female child was born on February 19, 1988, to L.L.B. and M.K.B. as father. The parents have never been married. The mother placed the infant with her father and stepmother.

On September 19, 1988, the father and stepmother filed their petition in the Juve-

nile Division of the Circuit Court to adopt the infant. The parties named in the caption are the father and stepmother as petitioners and the putative father M.K.B., the respondent. The petition is in two counts. It is patterned upon the form found in Mo. Juvenile Law, § 9.77 (MoBar 1985, 1988). The first count includes an allegation that physical custody of the infant was granted to petitioners by the juvenile court and that legal custody has been in the juvenile court since May 23, 1988. By his answer, the father denied those allegations. He alleges legal custody should be with him as the result of the dismissal of Juvenile Case JU 188–40J.

Count I further alleges the mother consented to the requested adoption. It alleges the father had neglected and abandoned the child for six months prior to the filing of the petition. Count I prayed for a decree transferring custody of the infant to the petitioners for the purpose of an adoption. Count II incorporated the allegations of Count I. The prayer of Count II was that nine months from the date of the transfer of custody as prayed in Count I, the court enter a decree of adoption in favor of the petitioners.

On October 7, 1988, the mother filed an "Entry of Appearance" and a "Consent of a Parent to Adoption" in which she consented to the adoption of the infant by her father and stepmother. Each document was dated September 9, 1988. The caption on each document referred to the father and stepmother as petitioners and L.L.B. and M.K.B., respondents.

November 3, 1988, the father filed his answer in which he admitted paternity. He denied that he had neglected or abandoned the infant. As stated, he alleged "legal custody should be with this Respondent as the result of the dismissal of Juvenile Case JU 188–40J." He prayed the court to enter a decree transferring custody of the infant to him and to deny petitioners' request for a transfer of custody and adoption.

The docket sheet establishes that on February 1, 1989, a hearing was held upon the petition. It recites the petitioners appeared in person and by their attorney, the father appeared in person and by his attorney and that the guardian ad litem appeared in person. The docket entry further recites that after a hearing the court found there was no clear, cogent and convincing evidence that the father had neglected or abandoned the infant as alleged in the petition. It continues "Therefore, the ct. denies pet's request for transfer of custody and grants respd's request for custody; care, custody and control of the minor child awarded to resp." The record includes a formal "Judgment Decree and Order" dated February 1, 1989. That document includes the same recitation of appearances. It substantially follows the docket entry. In paragraph 4, it recites "The Court does, therefore, deny transfer of custody to the Petitioners." In paragraph 5, the court adds a finding that the mother is not a fit and proper person to have custody of the child and ordered physical custody of the child in the father.

On February 4, 1989, the father filed in the Circuit Court of Christian County, a Petition for Writ of Habeas Corpus against L.L.B.'s father and stepmother, L.L.B. and another named individual. In that petition he asserted his right to custody of the child by virtue of the Decree of February 1, 1989, entered in the adoption proceeding. On February 6, 1989, a Writ of Habeas Corpus directed to the respondents named in the petition was issued. It directed them to produce the infant on February 9, 1989, at 1:30 p.m. A Petition for Prohibition was filed in this court on February 9, 1989, and a Stop Order was issued. On February 16, 1989, this court issued its Preliminary Order in Prohibition, as prayed in the petition, directed to the respondent.

The putative father seeks to uphold the jurisdiction of the Juvenile Division of the Circuit Court to transfer custody to him upon the basis that such transfer is in the best interests of the child. His contention is exemplified by the following portions of his argument. The mother "consented to the adoption and the termination of all her parental rights in the filing by the [B.s] against M.K.B. and L.L.B. [sic]." "L.L.B., natural mother had consented to termination not only of custody of the child but also of all parental rights." "The respondent, as Circuit Judge sitting in the Juve-

nile Division of Christian County, Missouri, in a case where the welfare of a child less than one-year old is at issue, including who maintains custody, care and control of that child, is charged with and indeed has no other alternative but to determine what is in the best interest of that child." "The Relator in this proceeding would ask this Court to determine that the Circuit Court did not have jurisdiction to enter an order which was considered to be in the best interests of the child. On the contrary, this Court was charged with that requirement and had no other choice." The putative father also cites and relies upon a decision by the juvenile officer that the putative father was a fit and proper person to have custody of the child.

■ The putative father's arguments are unavailing and his position is unsound. It may be conceded that a court of competent jurisdiction may determine that it is in the best interests of an illegitimate child to be placed in the custody of a putative father. *David v. Cindy*, 565 S.W.2d 803 (Mo.App. 1978). See *In Interest of J.F.*, 719 S.W.2d 790 (Mo. banc 1986). But, that determination must be made in accordance with established rules of practice and procedure. "It is essential to the validity of a judgment that the decision shall have been rendered in an action or proceeding before the court in some form recognized and sanctioned by law." *Carl v. Carl*, 284 S.W.2d 41, 44 (Mo.App.1955). The authority of the juvenile court to enter the portion of the decree in question cannot result from the premise that it acted in the best interests of the child. "Rather, respondent has relied on the general theory that the court in which the motion was filed had jurisdiction to enter any order it might deem for the best interest of the child, without following established and time-honored practices and procedures that are so firmly embodied in the law as to be declared constitutional due process. We are not at liberty to support such action by the trial court and will not accept as valid, no matter how well intentioned, that portion of the order transferring custody, which was made in the exercise of power beyond the court's authority to act." *In re Lipschitz*, 466 S.W.2d 183, 186 (Mo.App.1971).

■ The authority of the Juvenile Division of the Circuit Court is defined by statute. No statute gives that division plenary authority to determine the custody of children in all circumstances or in all proceedings. *In re Adoption of J.M.K.*, 363 S.W.2d 67 (Mo.App.1962); *State ex rel. M.L.H. v. Carroll*, 343 S.W.2d 622 (Mo. App.1961); *Shepler v. Shepler*, 348 S.W.2d 607 (Mo.App.1961). "Even a court of general jurisdiction, while engaged in the exercise of a special statutory power, is a court of limited jurisdiction and its powers are confined strictly to the authority given by statute. A juvenile court is a legal tribunal limited in its jurisdiction by the statute law which establishes it, and the deprivation of parental custody must be in accordance with the due process fixed by such statutes." *State v. Taylor*, 323 S.W.2d 534, 537 (Mo.App.1959).

■ A proceeding under Chapter 211 must be commenced by the juvenile officer. *State v. Taylor*, supra; *In Interest of K.P.B.*, 625 S.W.2d 692 (Mo.App.1981). The transfer of custody the juvenile division is authorized to order in an adoption proceeding is a transfer incident to the requested adoption. It is "a proper preliminary procedural step in adoption proceedings." *In re Mayernik*, 292 S.W.2d 562, 569 (Mo.1956). Also see *In re Adoption of J.M.K.*, supra; *State ex rel. M.L.H. v. Carroll*, supra; *State ex rel. Catholic Charities of St. Louis v. Hoester*, 494 S.W.2d 70 (Mo. banc 1973). An adoption proceeding is not a forum for a determination of custody between parents. That limitation has been expressed in the following terms.

'It was never intended to supplant the jurisdiction of courts to adjudicate the custody of children as between parents who are living apart, and conceding the affection of respondents for the child and their genuine interest in its welfare, they may not have recourse to the statute for any such unauthorized purpose.'

*In re Perkins*, 234 Mo.App. 716, 728, 117 S.W.2d 686, 693 (1938). This limitation is fortified by the fact that in an adoption proceeding predicated upon neglect or abandonment, the court does not reach the issue of custody until such neglect or aban-

donment on the part of the nonconsenting parent has been established. *Adoption of R.A.B. v. R.A.B.,* 562 S.W.2d 356 (Mo. banc 1978).

Moreover, the authority of the juvenile court in this action was limited by a principle applicable to all courts and all actions. The court has no authority to grant relief against one who is not a party. *Schneider v. Sunset Pools of St. Louis, Inc.,* 700 S.W.2d 137 (Mo.App.1985); *Kaplan v. Centerre Trust Co. of St. Louis,* 740 S.W.2d 711 (Mo.App.1987). "A party to an action is a person whose name is designated on record as plaintiff or defendant." *Maurer v. Clark,* 727 S.W.2d 210–211 (Mo.App.1987). Also see *M & A Electric Power Cooperative v. True,* 480 S.W.2d 310 (Mo.App.1972).

The parties named in the caption of the petition in this action are the mother's father and stepmother and the putative father. The same is true of the caption of the putative father's answer. The status of the mother has been appropriately noted. "Not having been sued by plaintiff, they were not defendants." *State ex rel. Saupe v. Swink,* 475 S.W.2d 466, 467 (Mo.App.1971).

The mother did execute an Entry of Appearance on a pleading in which she was named as a respondent. However, this pleading was executed before the adoption petition in the action in question was filed. It is the petition that designates the parties to the action. The mother had no leave to intervene and did not do so. See *In re Adoption of K.L.G.,* 639 S.W.2d 619 (Mo.App.1982). Nor did she become a party because the petitioners' lawyer had at one time represented L.L.B. in other proceedings. Further, she did not become a party by appearing as a witness.

The respondent has recognized the mother was not a party. The appearance of the parties set forth in the docket entry are the father and stepmother and the putative father. The same is true of the "Judgment Decree and Order". The fact that judgment was prepared by the lawyer for the putative father demonstrates that the putative father, as well as the court, recognized the mother was not a party.

Contrary to respondent's contention, the consent to adoption executed by the mother did not establish she was not fit to have custody of the child. There are circumstances in which a consent to adoption demonstrates the consenting parent is more concerned with the welfare of the child than her own. It thereby may be evidence of her fitness as a parent. Nor did that consent terminate or consent to the termination of her parental rights in respect to the child. *In re Adoption of J.M.K.,* supra; In re Mayernik, *supra;* In re Smith, 314 S.W.2d 464 (Mo.App.1958). The consent was limited to an adoption by the adoptive parents named in that consent. "The consent was to an adoption by named prospective adoptive parents." *In re Mayernik,* supra, at 568. Viewed as a consent to a transfer of custody, it was only a consent to a transfer of custody as an incident of the specific adoption by the father and stepmother. In re Mayernik, supra.

The record contains no suggestion of any notice to the mother that the juvenile division might find she was not fit to have custody of her child. In summary, because of the nature of the adoption proceeding, as well as the status of the parties, the Juvenile Division of the Circuit Court had no authority to determine the mother was not a fit parent nor to transfer custody of that child to the putative father. Its action purporting to do so is contrary to established rules of practice and procedure and is void. *Michael v. Michael,* 727 S.W.2d 424 (Mo.App.1987); *Keen v. Dismuke,* 667 S.W.2d 452 (Mo.App.1984); *Carl v. Carl,* supra; *Shepler v. Shepler,* supra; *In re Lipschitz,* supra. Prohibition is the proper remedy to bar recognition of and enforcement of the provisions in question. *State ex rel. St. Louis County v. Stussie,* 556 S.W.2d 186 (Mo. banc 1977); *In re Lipschitz,* supra.

It must be noted the respondent in his brief extensively relies upon purported facts not in the record. For example, the record does not include a transcript of the hearing upon the adoption petition. Yet in his brief the respondent includes his characterization of bits of testimony of the rela-

tor. For example he says, "[s]he also admitted under oath that she had sneaked away in the early morning hours from M.B. with her child because she knew he would not allow her to take the child with her." He adds "[w]ithin three or four days thereafter she had dumped her child on the doorstep of her natural father and stepmother (whose home she had left when she was 15 years old herself) and proceeded to enter the Marian Center."

By reply brief, the relator asked this court to strike such references. The relator's position is sound. *Pretti v. Herre*, 403 S.W.2d 568 (Mo.1966); *Kipper v. Vokolek*, 546 S.W.2d 521 (Mo.App.1977); *Browning–Ferris Industries of Kansas City v. Dance*, 671 S.W.2d 801, 807 (Mo.App.1984). However, it is not necessary for this court to sift the respondent's brief to cull such references. They do not deal with and are not probative with respect to the issue presented in the petition. Their inclusion in a brief in such unlawyerlike language demonstrates the weakness of the respondent's position.

The preliminary order in prohibition is made absolute.

FLANIGAN, P.J., and HOGAN, J., concur.