

# Missouri Court of Appeals

### Southern District

### Division Two

STATE OF MISSOURI ex rel.  )
CHOCTAW NATION OF OKLAHOMA,  )
                                   )
       Relator,  )
                                   )
   vs.  )       No. SD37148
                                   )
HONORABLE SCOTT S. SIFFERMAN,  )       Filed:  October 6, 2021
ASSOCIATE CIRCUIT JUDGE,  )
                                   )
       Respondent.  )

### ORIGINAL PROCEEDING IN PROHIBITION

### **PRELIMINARY WRIT OF PROHIBITION MADE PERMANENT**

### **Procedural History**

Child was born in May 2018.  Child's biological father ("B.F.") is a member of the Choctaw Indian Nation of Oklahoma ("Choctaw Nation").[1]  There is no indication Child's biological mother ("K.F.") was a member of any Indian tribe.

Shortly after birth, Child was "remove[d]" due to "emergency circumstances," and was placed with Foster Parents on May 9, 2018.  The juvenile division of the circuit court ("juvenile court") acquired jurisdiction of Child the next day under section 211.031.1(1) concerning abuse and neglect.  The protective custody proceeding was

---

[1] DNA testing reported on February 8, 2019 established B.F. is Child's biological father with a probability of paternity equal to 99.9997%.

assigned case number 18LW-JU00074, and Respondent is the judge who was assigned to preside over that proceeding. Respondent then vested temporary and ultimately full legal custody of Child in the Children's Division.[2] The Children's Division placed Child with Foster Parents, who are not members of any Indian tribe and are not relatives of Child. The Children's Division's initial permanency goal was reunification with a concurrent goal of adoption.

On September 14, 2018, the Choctaw Nation filed a notice of intervention in the protective custody proceeding under 25 U.S.C. § 1911(c), and Respondent "accept[ed] and acknowledge[ed]" the intervention. Respondent subsequently entered an order on April 10, 2020, granting the Choctaw Nation the right to intervene in the protective custody proceeding under 25 U.S.C. § 1911(c). B.F.'s parental rights to Child were terminated in March 2021.[3] A paternal cousin ("M.S."), who is a member of the Choctaw Nation, contacted the Children's Division "to request adoptive placement." Weekly "[v]irtual visits" between Child and M.S. occurred "since March 2020" through at least March 9, 2021.

On Friday, April 3, 2020, the Children's Division convened an Adoption Staffing that produced a recommendation that Foster Parents should adopt Child rather than M.S. Under Section 4.9.3 of the Missouri Department of Social Services Child Welfare

[2] The Children's Division is "an integral part of the department of social services," and is the "state agency" to administer "[c]hild welfare services," and "[a]ny other duties relating to public assistance and social services which may be imposed upon the department of social services." Section 207.010, RSMo 2016. The Children's Division also has the "power" "[u]pon request, to cooperate with the juvenile court and furnish social studies and reports to the court with respect to children as to whom adoption, abuse, or neglect petitions have been filed," and "[t]o accept for social services and care, homeless, dependent or neglected children in all counties where legal custody is vested in the children's division by the juvenile court where the juvenile court has acquired jurisdiction pursuant to subdivision (1) or (2) of subsection 1 of section 211.031; provided that prior to legal custody being vested in the children's division, the children's division shall conduct an evaluation of the child . . . . Temporary custody may be placed with the children's division while the evaluation is being conducted." Section 207.020.1(16) and (17), RSMo 2016.

[3] B.F. is in prison for the murder of K.F.

2

Manual, the Adoption Staffing Team's recommendation is subject to review by an independent reviewer for "procedur[al] error" or "bias which precluded consensus from being reached." Requests for review must be submitted within three business days of the recommendation. The independent reviewer must be an experienced and disinterested member of the Children's Division staff, and must submit a written response within five business days "of assignment of the review request."[4]

On Tuesday, April 7, 2020, M.S. and the Choctaw Nation each submitted a timely request for review of the Adoption Staffing Team's recommendation. On April 10, 2020, the independent reviewer concluded "the case management agency failed to give due diligence to explore familial placements and take actions to ensure the child's cousin, [M.S.] was afforded the opportunity to be considered as an adoptive placement." On April 14, 2020, the Children's Division informed Respondent that "[a]s such, the adoption staffing decision made on April 3, 2020 has been set aside, and Children's Division will complete the necessary relative exploration and associated activities."

In early March 2021, M.S. filed a petition in the juvenile court to adopt Child in a proceeding with case number 21LW-JU00041. Later that month, Foster Parents filed a petition in the juvenile court to adopt Child in a proceeding with case number 21LW-JU00053. Both adoption proceedings were assigned to Respondent. On motion of the Choctaw Nation filed in this protective custody proceeding, Respondent granted the Choctaw Nation and M.S. the right to intervene in Foster Parents' adoption proceeding – on April 3, 2021 in this protective custody proceeding and on April 2 and 23, 2021 in the Foster Parents' adoption proceeding. On motion of the Choctaw Nation filed on May 24,

---

[4] Missouri Department of Social Services Child Welfare Manual (2019), https://dssmanuals.mo.gov/child-welfare-manual/child-welfare-manual-2019-update/.

2021 in both adoption proceedings for a change of judge as a matter of right, the adoption proceedings were reassigned to another judge shortly after that date. At a meeting on March 8, 2021, the Children's Division "reminded" Foster Parents, M.S., Child's guardian ad litem ("GAL"), and representatives of the Choctaw Nation "of the scheduled adoption staffing coming up on" March 30, 2021.

Subsequently, on motion by Child's GAL in May 2021, more than one year after the Adoption Staffing Team's nonfinal administrative recommendation on April 3, 2020 that Foster Parents should adopt Child was reviewed administratively and set aside, Respondent temporarily enjoined the Children's Division "from moving forward with a new Adoption Staffing" for Child "pending this Court's resolution" of the GAL's motion to reinstate the Adoption Staffing Team's prior nonfinal recommendation. On May 26, 2021, Respondent vacated the Children's Division's administrative review and set aside of the Adoption Staffing Team's prior nonfinal recommendation; ordered that the recommendation be reinstated; and dissolved its temporary injunction against the Children's Division.

On June 17, 2021, the Choctaw Nation filed a petition requesting a writ of prohibition ordering Respondent to take no further action in this protective custody proceeding other than vacating Respondent's May 26, 2021 order pending resolution of competing petitions seeking to adopt Child. We issued a preliminary writ of prohibition on June 29, 2021, "direct[ing] [Respondent] to vacate [his] order of May 26, 2021, and refrain from taking further action in the internal administrative processes of the Children's Division, until further order of this Court." We now make our preliminary writ of prohibition permanent.

4

**Standard of Review**

As stated by our Supreme Court in *State ex rel. St. Charles County v. Cunningham*, 401 S.W.3d 493, 495 (Mo. banc 2013):

> A writ of prohibition is available in the following circumstances: (1) to prevent a usurpation of judicial power when the circuit court lacks authority or jurisdiction; (2) to remedy an excess of authority, jurisdiction or abuse of discretion when the lower court lacks the power to act as intended; or (3) when a party may suffer irreparable harm if relief is not granted. *State ex rel. Houska v. Dickhaner*, 323 S.W.3d 29, 32 (Mo. banc 2010). "Prohibition may be appropriate to prevent unnecessary, inconvenient, and expensive litigation." *Id*.

Further, as the Eastern District stated in *State ex rel. M.D.K. v. Dolan*, 968 S.W.2d 740, 745 (Mo.App. E.D. 1998):

> appellate courts are reluctant to issue the extraordinary writ of prohibition except "where a clear right" to it exists. *State ex rel. Lahammer v. Franklin*, 756 S.W.2d 956 (Mo.App. S.D. 1988). Courts "should employ the writ judiciously and with great restraint." *Derfelt v. Yocom*, 692 S.W.2d 300, 301 (Mo. banc 1985). A writ should issue only "when the facts and circumstances of the particular case demonstrate unequivocally that there exists an extreme necessity for preventive action." *Id*.

**Analysis**

The Choctaw Nation asserts that Respondent exceeded his authority in this protective custody proceeding when he vacated the Children's Division's administrative review of, and decision to set aside, a nonfinal, administrative recommendation by an Adoption Staffing Team that Foster Parents should adopt Child, and reinstated the prior nonfinal recommendation. We agree.

*Standing*

In his brief, Respondent argues that the Choctaw Nation does not have standing to seek this writ of prohibition. On two occasions, Respondent granted the Choctaw Nation the right to intervene in this protective custody proceeding under 25 U.S.C. § 1911(c),

5

and also granted the Choctaw Nation the right to intervene in Foster Parents' adoption proceeding. We see no error in these rulings. The Choctaw Nation has standing to seek this writ of prohibition.

*Respondent's Express or Implied Authority*

The juvenile court:

"is a legal tribunal limited in its jurisdiction[5] by the statute law which establishes it." *State v. Taylor*, 323 S.W.2d 534, 537 (Mo.App. 1959); *State ex rel. L.L.B. v. Eiffert*, 775 S.W.2d 216, 219 (Mo.App. 1989) (§ 211.031 does not give the juvenile division plenary authority to determine custody of children in all circumstances or in all proceedings). While the juvenile code is to be liberally construed to promote the interests of infants, § 211.011, RSMo 1986, such liberal construction cannot be utilized to give the juvenile court jurisdiction and powers not conferred upon it by statute. *In Interest of M.K.R.*, 515 S.W.2d 467, 470 (Mo. banc 1974) (no authority under juvenile code to order sterilization of an infant).

*In the Interest of B.L.W.*, 823 S.W.2d 119, 121-22 (Mo.App. S.D. 1992). The juvenile court also has by implication the authority necessary to permit it to effectively exercise its express authority. *See Miller v. Russell*, 593 S.W.2d 598, 602 (Mo.App. W.D. 1979) (in the context of determining paternity, stating "Section 211.241 authorizes the court to summon the child's parent for inquiry as to financial resources and to order appropriate contribution to the child's support. Of necessity, this function may only be performed if the court by implication is also authorized under the statute to identify as a parent the person against whom the order for support is to be entered and enforced."); and *In re the Marriage of Denton*, 169 S.W.3d 604, 611-12 (Mo.App. S.D. 2005) (discussing *Miller* and quoting the language referenced above).

---

[5] Following *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009), "jurisdiction" in this context should be read "authority." *See State ex rel. Country Mutual Insurance Co. v. May*, 620 S.W.3d 96, 98 n.3 (Mo. banc 2021) ("Whether a circuit court has the power to act as intended within the exercise of its personal and subject matter jurisdiction is an issue of circuit court authority."); and *In the Matter of B.R.R.*, 487 S.W.3d 515, 518 & n.3 (Mo.App. S.D. 2016) ("the granting of relief not authorized by statute is not jurisdictional in nature").

In this protective custody proceeding, section 211.031, RSMo Cum.Supp. 2021, provides in relevant part:

1.  Except as otherwise provided in this chapter, the juvenile court . . . shall have exclusive original jurisdiction in proceedings:

(1) Involving any child who may be a resident of or found within the county and who is alleged to be in need of care and treatment because:

(a) The parents, or other persons legally responsible for the care and support of the child, neglect or refuse to provide proper support, education which is required by law, medical, surgical or other care necessary for his or her well-being . . . ;

(b) The child is otherwise without proper care, custody or support; [and]

. . . .

(4) For the adoption of a person . . . .

Nothing in these express powers or other express powers referenced by Respondent authorizes Respondent to interfere in the Children's Division's administrative review of a nonfinal administrative recommendation for adoption, and then substitute Respondent's judgment for that of the Children's Division and compel the Children's Division to reach or adhere to a particular recommendation.  And, authority to do so by implication is not necessary to permit Respondent to exercise effectively any of its express authority.  Even a final administrative recommendation as to who should adopt Child (much less a nonfinal recommendation) would not be binding on the juvenile court, and, in any juvenile court proceeding, the juvenile court would be entitled to give the recommendation the weight the juvenile court felt it deserved.[6]  A final recommendation for adoption would not decide any issue that the juvenile court must

---

[6] Section 4.9.1.2 of the Child Welfare Manual makes clear that "only the juvenile court has the final authority to approve the adoption of a specific child by a specific family."  Missouri Department of Social Services Child Welfare Manual (2019), https://dssmanuals.mo.gov/child-welfare-manual/child-welfare-manual-2019-update/.

decide in exercising its express or implied authority – a "recommendation" for adoption simply does not decide an issue and would not prevent Respondent from accomplishing the effective exercise of any of the juvenile court's express or implied authority. Respondent did not have the express or implied authority to interfere in the Children's Division's administrative review of a nonfinal administrative recommendation for adoption, and then substitute Respondent's judgment for that of the Children's Division and compel the Children's Division to reach or adhere to a particular recommendation.[7]

We make our preliminary writ permanent, and further direct Respondent to refrain from taking further action in the internal administrative processes of the Children's Division except as authorized by law.

Nancy Steffen Rahmeyer, J. – Opinion Author

Gary W. Lynch, C.J., – Concurs

Mary W. Sheffield, P.J. – Concurs

---

[7] Respondent contends that he is authorized to review the Children's Division's nonfinal administrative recommendation under section 536.150, RSMo 2016. Section 536.150.1 in relevant part provides:

> When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have rendered a decision which is not subject to administrative review, determining the legal rights, duties or privileges of any person, . . . and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action . . . ; and the court shall render judgment accordingly, and may order the administrative officer or body to take such further action as it may be proper to require; but the court shall not substitute its discretion for discretion legally vested in such administrative officer or body . . . .

Section 536.150 does not apply in this proceeding as we currently do not have a decision which is not subject to administrative review or determines the legal rights, duties or privileges of any person.

Furthermore, if a final Children's Division recommendation for adoption were subject to review by the juvenile court under section 536.150, the statute prohibits the reviewing court from "substitut[ing] its discretion for discretion legally vested in such administrative officer or body."