

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| In the Matter of M.D.P., a minor., | ) | No. ED112029 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Jefferson County |
| vs. | ) | Cause No. 22JE-JU00316 |
| | ) | |
| T.P., | ) | Honorable Carl W. Yates III |
| | ) | |
| Appellant. | ) | FILED: October 29, 2024 |

## Opinion

T.P. (Appellant) appeals from the trial court's judgment granting a petition for adoption and denying his motion to reopen the evidence.[1] Appellant raises two points on appeal. First, he alleges the trial court abused its discretion in denying his motion to reopen the evidence because he claims he presented the trial court with colorable claims that bore on the issue of whether the adoption was in the best interest of the child. Second, Appellant alleges the trial court erred in granting the Petition because the court's judgment, that the adoption was in the best interest of the child, was against the weight of the evidence. We hold the circuit court erred by closing the record prior to the filing of documents it had ordered to be filed as part of the court's best interest analysis. Specifically, Respondent's statutorily required criminal background, pursuant to §

---

[1] Names are redacted pursuant to § 509.520, RSMo (Cum. Supp. 2023).

453.070 RSMo (Cum. Supp. 2021)[2] and Division of Social Services - Children's Division (Children's Division) history that were not included with the adoption home study. In so holding, we grant Point One, which is dispositive of the appeal, so we need not reach the merits of Point Two. Accordingly, we reverse the circuit court's order and judgment of adoption. We remand for the circuit court to reopen the evidence for the admission of the records it requested so that they may be considered as part of the court's best interest of the child determination.

## Background

S.K. (Mother) and R.R. (Respondent) filed a joint petition for adoption (Petition) of M.D.P. (Child) in July 2022 in the Circuit Court of Jefferson County against Appellant. The Petition alleged Mother was the natural mother of Child, a minor child born in 2016, and that Appellant was the putative father. It alleged Appellant had abandoned and failed to provide any financial support for Child; that Child had been in the custody of Mother and Respondent for six months prior to the filing of the Petition; and that Respondent sought to adopt Child as her father and change Child's last name to Respondent's.

Appellant did not file a responsive pleading despite receiving notice and providing the court his address in November 2022. Appellant retained counsel to appear at the adoption hearing that took place on August 17, 2023. Appellant also filed a copy of a Children's Division safety intervention plan the day of the hearing. Said safety plan was signed by Appellant ten days prior to the adoption hearing. The court appointed a guardian ad litem (GAL), shortly after the filing of the Petition, who provided a report following the hearing recommending the approval of the adoption. A social service agency provided a home study pursuant to § 453.070 and recommended in favor of the adoption. Attached to the home study were letters in support

---

[2] All statutory references are to RSMo (Cum. Supp. 2021), unless otherwise indicated.

of Respondent's adoption of Child written by co-workers and business associates of Respondent. Also attached to the home study were the Child's school records and medical records. Respondent's criminal background check was not attached as an exhibit to the home study.

**The Record on the Adoption Hearing**

At the outset of the hearing, the trial court asked for announcements and a Children's Division attorney attempted to enter the case for the state and ask for a continuance. Mother objected and the trial court ruled the Children's Division had no standing.

Mother testified Appellant had not seen Child from January 1, 2022, through the filing of the adoption Petition in July 2022, nor had Appellant sent money during that time. She said she did not know if Appellant was Child's father or not. He is not listed on Child's birth certificate, nor in the putative father registry. Mother and Child moved to Florida for about four years from about 2018 to August 2021, during which time Appellant called the Florida "Division of Family Services" (DFS)[3] many times to do a wellness check on Child. Mother testified that she secured a restraining order against Appellant in Florida in 2018 and the court took judicial notice of the Florida case. Mother testified that when they returned to Missouri, Appellant had threatened to "come take" Child. After that, Mother blocked Appellant on her phone. She said he called Children's Division several times, causing Children's Division to make several trips to her residence for wellness checks out of concern for Child's safety, but Mother could not explain why.

---

[3] In Missouri the agency responsible for child protection is called the Missouri Children's Division and it is part of the Missouri Department of Social Services. It was formerly called Division of Family Services. The Florida agency responsible for child protection is called the Florida Department of Children and Families. In her testimony Mother referred to both agencies as "DFS." For clarity we will refer to Missouri's child protection agency by its proper name, Children's Division.

3

Mother testified she wanted Respondent, whom she referred to as "her friend," to adopt her child because he has been in the child's life for six-and-a-half years. The evidence established Child was seven years old at the time of the hearing. In July 2023, Mother dropped Child off at Respondent's daughter's house and went to North Carolina on business. When Mother returned, she was told Child was taken by her aunt, but no one had informed Mother of that action. Mother testified later Appellant "just came and took her. No one said anything to me . . ." Mother was unaware that Respondent's ex-wife became concerned for Child's safety and brought Child to Appellant. Mother became aware that there was an investigation in St. Charles County concerning an allegation that Respondent had sexually abused Child. Mother testified she learned of the investigation when her attorney told her about it, one day before the adoption hearing. Mother could not provide an explanation for why she had not previously been aware of the pending investigation. She said that when Children's Division visited her home, workers checked Child's room and spoke with her and Respondent, but would not tell them anything, not even that Respondent was being investigated for child abuse.

Respondent also testified at the hearing. During cross-examination Respondent admitted that he had seventeen prior felony convictions. He testified that the convictions were mostly for bad checks, but also for tampering with a motor vehicle, forgery and driving while suspended. There was no detailed testimony as to the exact nature of each conviction, nor was Respondent's criminal background check filed with the court. Respondent stated that Mother was a good friend of his and that he wanted to adopt her seven-year-old daughter out of the goodness of his heart. On cross-examination he denied ever having been romantically involved with Mother. He acknowledged that his ex-wife and one of his daughters took Child to Appellant. As a result of this action, he fired his ex-wife from the company he owned. Respondent admitted Mother

4

posted a picture on Instagram with photos of him and Child that said "Happy Father's Day," but said they did that to stop Appellant from coming and taking Child.

On cross-examination, when Respondent was asked if Appellant had reached out to him in the last couple of years through text and asked to see Child, Respondent first answered "yes." He testified, "Any time [Appellant] reaches out to me, I tell him it's not my fight." Respondent also denied Appellant had reached out to him. He said he wasn't sure if he had ever talked to Appellant before July 2022, and later said he didn't know.

Respondent was questioned about his interactions with Children's Division, and he explained that workers came to his home because "everybody kept calling and telling them we didn't have any food in the house." He added that Children's Division also spoke with Mother and him on an occasion when Child wore makeup to school. He and Mother participated in a six-week class through Children's Division. Respondent testified that these contacts with Children's Division occurred after the adoption Petition had been filed.

During closing, Appellant's counsel reminded the trial court there was a pending investigation regarding Child, but the court responded that no one had presented any evidence of the investigations. Counsel said he wished to call the Children's Division to testify, but the court stated an investigation was not evidence of anything. Appellant's Counsel stated that the investigation was pertinent to what was in the best interest of Child, and that he was not sure why the adoption had to go through that day; the court said it had not yet made a decision about whether or not to approve the adoption. The court asked the GAL for his recommendation and the GAL said the allegations that had been raised recently "may be a concern," because Respondent's criminal background check and Children's Division abuse and neglect check were not in the file. Respondent's attorney said those documents were supplied for the home study,

but he could file them separately, and the court responded it would leave the record open for "those background checks."[4] The GAL recommended in favor of adoption stating that if the allegations were valid, the investigations and protections available would ensure the safety of Child.

**Post Adoption Hearing Procedures**

On August 22, 2023, five days after the hearing, Appellant filed a motion to reopen the evidence, plus exhibits to the motion. Exhibit A was a notice that Appellant filed with the Department of Health and Senior Services six days prior to the adoption hearing expressing intent to claim paternity of Child by registering through the putative father registry. Appellant also referred the court to a paternity suit he filed against Mother in the Circuit Court of St. Louis County, the day after the adoption hearing. Additionally, Exhibit B was an incident/investigation police report of a domestic assault incident between Respondent and Mother and Child from April 2021. Finally, Exhibit C was an obituary for Leonard J. Roderick Jr., which listed survivors as his daughter (Mother), and his five brothers (one of whom was Respondent).

The GAL filed his report a week after the hearing. He reviewed Respondent's criminal background check and child abuse background check, although neither document was filed with the court. In his report, GAL noted that he found nothing in the child abuse background check, which was approximately nine months old, however the attorney for the Children's Division voiced concerns to him but was unable to verify the status of any investigations involving Child. The GAL's attempts to contact the investigator that was part of the Children's Division safety intervention plan filed by Appellant were not returned.

---

[4] The court stated it wanted the "background check filed with all due haste." The court stated it would leave the record open for that, but would be issuing its order by the middle of the following week.

6

The GAL's report indicated that he had an opportunity to review Appellant's motion to reopen the evidence and found the allegations troubling, but containing little proof. The GAL was aware of the allegation that Mother and Respondent had an "incestuous relationship," in that Mother was raised by Respondent's brother; however, GAL was informed there was no biological relationship between Mother and the man who raised her. GAL stated that the Children's Division "apparently confirmed" the information through DNA testing, but the GAL was unable to independently confirm it. Moreover, the GAL found the 2021 allegation of domestic violence "troubling as well;" however, no charges were filed. The GAL found it was impossible to know without more information whether the allegation fell within the common situations of exaggerations or underreporting/recanting allegations of domestic violence.

Further, the GAL found credible the allegation against Mother and Respondent of perjury. The testimony at the hearing was that the petitioners were "friends," but the police report and adoption home study described a romantic relationship between Mother and Respondent. In particular the home study filed with the court described Respondent as Mother's "fiancé." The GAL noted that Respondent had an extensive history of fraudulent behavior, which could cause one to question his veracity, but the GAL also surmised that the non-traditional relationship between Mother and Respondent could also cause them to downplay their relationship, even though the witness stand was not the place for doing so. The GAL acknowledged questionable evidence related to Mother and Respondent, but found equally troubling behavior by Appellant. Ultimately, he recommended the proceedings should not be delayed based on Appellant's bad behavior, not filing pleadings, and raising allegations after the hearing started. The GAL stated the allegations in the adoption Petition appeared to have been

7

met by the evidence adduced at trial, and the adoption would serve in the best interest of Child.

**The Trial Court's Judgment**

On August 28, 2023, the trial court entered an order denying Appellant's motion to reopen the evidence and granting the Petition. The court agreed with the GAL that Appellant's behavior weighed greater than Appellant's allegations about Mother and Respondent and concluded Appellant had abandoned his case by not filing a responsive pleading or objection until almost a year after the Petition was filed and only in a motion to reopen the evidence.

In addition to Appellant abandoning his case, the trial court also considered that Appellant was not on the putative father registry and anything in the Petition was deemed admitted pursuant to Rules 55.01 and 55.09.[5] The court also noted a separate case in Jefferson County, 23JE-CC00722, in which the same court issued a writ when Appellant or his relatives were allegedly unlawfully restraining Child and the court found Mother was the only individual with any legal or physical rights to custody of Child. Moreover, based on the evidence presented at the hearing, the court found Appellant made no attempt to contact or support Child in the six months prior to the Petition being filed and little to no effort in the six months prior to the filing of the Petition. The court clarified that an adoption proceeding should not be used "and is not the appropriate forum to adjudicate parental custody rights other than as an incident to adoption." *See State ex rel. L.L.B. v. Eiffert*, 775 S.W.2d 216, 219 (Mo. App. S.D. 1989). After receiving the home study pursuant to § 453.070, plus the written consents from Mother and Respondent,

---

[5] All references to Rules are to Missouri Supreme Court Rules (2023). Rule 55.01 provides, "There shall be a petition and an answer. . ." as well as a requirement to plead an "affirmative avoidance to any matter alleged in a preceding pleading." Rule 55.09 provides, "Specific averments in a pleading to which a responsive pleading is required . . . are admitted when not denied in the responsive pleadings. Specific averments in a pleading to which no responsive pleading is required shall be taken as denied."

the court granted the adoption. The home investigation did not include the statutorily required criminal background check of Respondent. This appeal follows.

Standard of Review

A trial court has wide discretion in determining whether to grant a motion to reopen a case for the admission of additional evidence. *Hagen v. Harris*, 680 S.W.3d 529, 535 (Mo. App. E.D. 2023). "'[O]rdinarily when there is no inconvenience to the court nor unfair advantage to one of the parties it would be an abuse of discretion upon the refusal to permit the introduction of material evidence which might substantially affect the merits of the case.'" *Metro Ins. Agency v. Mannino*, 856 S.W.2d 81, 83 (Mo. App. E.D. 1993) (quoting *Matter of Estate of Viviano*, 624 S.W.2d 130, 133 (Mo. App. E.D. 1981)). However, a trial court may refuse to reopen a case "where it is apparent counsel's failure to introduce evidence is attributed to a want of diligence." *Id.* at 83 (citing *see Prevost v. Wilkin,* 358 S.W.2d 417, 420 (Mo. App. 1962); *State v. Smith,* 80 Mo. 516, 520 (1883)). This court will not interfere with a court's decision in an adoption proceeding unless the welfare of the child requires another disposition. *In re C.D.G.*, 108 S.W.3d 669, 674 (Mo. App. W.D. 2002). The central goal of an adoption proceeding is to promote the best interests of the child, thus, "a greater burden is imposed on the trial court than simply according all parties a fair trial." *Id*. (quoting *Matter of Williams*, 672 S.W.2d 394, 395 (Mo. App. 1984).

Discussion

Appellant raises two points on appeal. His first point alleges the trial court abused its discretion in denying his motion to reopen the evidence because he presented the trial court with colorable claims that bore on the issue of whether the adoption was in the best interest of Child. In his second point, Appellant alleges the trial court erred in granting the Petition because the

9

court's judgment that the adoption was in the best interest of Child was against the weight of the evidence. Because Point One is dispositive of the appeal, we will not address the merits of Point Two.

## Point I – Motion to Reopen Evidence

Appellant first alleges the trial court abused its discretion in denying his motion to reopen the evidence because he claims he presented the trial court with colorable claims that bore on the issue of whether the adoption was in the best interest of Child. Appellant argues the court should not have ignored the paternity action he filed and should have allowed further evidence on the allegations of an improper relationship, domestic violence, and criminal investigations.

First, we note that an adoption proceeding should not be used "and is not the appropriate forum to adjudicate parental custody rights other than as an incident to adoption." *See State ex rel. L.L.B.*, 775 S.W.2d at 219. Appellant's allegations here do not turn this adoption case into another action to determine paternity or custody, especially because nothing was pleaded to that extent.

Adoption proceedings in Missouri are governed by statute. *Adoption of R.A.B. v. R.A.B.,* 562 S.W.2d 356, 357 (Mo. banc 1978). In addition to the general rules of statutory construction, Chapter 453 further provides its statutes "shall be construed so as to promote the best interests and welfare of the child in recognition of the entitlement of the child to a permanent and stable home." § 453.005.1 RSMo (Cum. Supp. 2014); *In re C.D.G.*, 108 S.W.3d at 675. The most important consideration in an adoption proceeding is the best interest of the child. *In re M.F.*, 1 S.W.3d 524, 532 (Mo. App. W.D. 1999) (internal citations omitted). A best interest determination involves the consideration of a myriad of factors, and no single factor is outcome-determinative. *Id.* As one court stated:

10

> The factors to be considered in determining what is in the best interests of the child are legion. They vary from case to case. It is impossible to catalogue all the factors that may be involved. It is virtually impossible to assign a degree of weight to specific favorable and unfavorable factors. With the exception of an extreme adverse factor, no single factor can be absolute. Each case must be considered upon its own facts.

*In Int. of L.W.F.,* 818 S.W.2d 727, 734 (Mo. App. S.D. 1991) (internal citations omitted). "A good environment with stability and structure is utterly vital to development and a child's best interests." *In re Adoption of T.J.D.*, 186 S.W.3d 488, 496 (Mo. App. S.D. 2006) (citing *Hunt v. Hunt,* 65 S.W.3d 572, 575[1] n.4 (Mo. App. 2002)).

However, in addition to the subjective factors the court uses to determine the best interests of the child to be adopted, the statutes provide certain requirements that aid in the court's assessment. For example, Section 453.030.1 provides for conditions of consent or for a guardian ad litem to determine a young child's wishes about adoption via interview. Importantly, though, "[i]n all cases the approval of the court of the adoption shall be required and such approval shall be given or withheld as the welfare of the person sought to be adopted may, in the opinion of the court, demand." § 453.030.1. Section 453.070.1 further dictates the court may not enter a decree of adoption of a child under eighteen years old "until a full investigation, which includes an assessment of the adoptive parents, an appropriate postplacement assessment and a summary of written reports . . . has been made." The investigation should include any information relevant to whether the child is suitable for adoption by the petitioner and whether the petitioner is suitable as a parent for the child. *Id.* However, subsection 5 of Section 453.070 provides an exception that the juvenile court may waive the investigation and report, *except the criminal background check*, and enter the decree for the adoption without such investigation and report in cases where the child, under eighteen, is the natural child of one of the petitioners and all of the parents gave consent to the adoption.

11

The requirement of investigation and report is mandatory. *In re Int. of G*, 389 S.W.2d 63, 66 (Mo. App. 1965). The purpose of the reports mandated by Chapter 453 is to provide the trial court with adequate information to determine whether it is in the best interests of the child to finalize the adoption. *See In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 812 (Mo. banc 2011), *abrogated on other grounds by S.S.S. v. C.V.S.*, 529 S.W.3d 811 (Mo. banc 2017). "Although these reports do not adjudicate the issues, the trial court cannot make an informed decision in their absence. Completion and review of these reports post-decree is futile." *Id.* at 812-13 (internal citations omitted).

Here, both the GAL and trial court expressed concerns during the hearing about Respondent's criminal background as well as child abuse and neglect background. The hearing ended but the court left the record open for the background check to be filed "with all due haste." Although it appears the GAL reviewed the criminal background check and the child abuse and neglect background check for Respondent, the GAL noted the abuse neglect check was approximately nine months old. Furthermore, there was no detailed testimony as to the exact nature of each of Respondent's convictions, nor was Respondent's criminal background check filed with the court for its own review, although it was statutorily required. Likewise, the court followed the GAL's recommendation without making its own independent assessment of whether adoption was in Child's best interest, as Chapter 453 dictates.

Although the record indicates there were multiple serious issues of open concern, over and apart from the two missing background checks, the GAL and the trial court essentially weighed Respondent's behavior against that of Appellant, the putative father, to demonstrate why adoption by Respondent would be in Child's best interest. However, "an adoption proceeding is not a child custody determination wherein competing custodial rights to a child are

weighed and determined by the court. Instead, an adoption proceeding requires a court to determine whether the creation of a parent-child relationship is in the best interests of a child." *In re S.H.P.*, 638 S.W.3d 524, 531 (Mo. App. W.D. 2021) (quoting *In re Adoption of C.T.P.*, 452 S.W.3d 705, 716 (Mo. App. W.D. 2014) (internal citations omitted)). Thus, the acts of Appellant in this matter should not have been a primary consideration when determining whether the adoption by Respondent is in the best interest of Child.

Here the court failed to assess the adoption of Child as required with an independent review of the statutorily required criminal background check or Respondent's child abuse neglect history, which could easily impact the suitability of Respondent's home for adoption. *See* § 453.070; *In re Adoption of C.M.B.R.*, 332 S.W.3d at 813. In *In re C.M.B.R.,* no pre-adoption assessment reports examining whether the child was suitable for adoption or the adoptive parents' fitness to be parents were filed with the trial court. *Id.* As a result, the court held the trial court was not fully briefed as to the best interests of the child. *Id.* Here, too, the trial court did not have the required background checks or other evidence of specific testimony upon which it could rely on instead to assess best interest. *See In re T.S.D.*, 419 S.W.3d 887, 894 (Mo. App. E.D. 2014) (finding pre-adoption assessment and post-placement reports, that although never offered as evidence at adoption hearing, were filed with the trial court prior to the hearing, in addition to substantial testimonial evidence related to the best interests of the child; thus, the trial court did not err in granting the adoption). The adoption statutes do not provide for a delegation of the court's duty to make its determination. "In all cases the approval of the court of the adoption shall be required and such approval shall be given or withheld as the welfare of the person sought to be adopted may, in the opinion of the court, demand." § 453.030.1. Although the discussion at trial seemed to imply that findings of criminal behavior and abuse could be

13

addressed at a later time, "[a] report presented after the decree of adoption has been entered obviously comes too late." *In re Interest of G*, 389 S.W.2d at 66.

The trial court has "a greater burden" on it than "simply according all parties a fair trial" in meeting the central goal of an adoption proceeding: to promote the best interests of the child. *In re C.D.G.*, 108 S.W.3d at 674 (quoting *Matter of Williams*, 672 S.W.2d at 395). We find the court's decision to allow Respondent to adopt Child without having independently reviewed the statutorily required criminal background, nor Respondent's child abuse neglect history, is an abuse of discretion, particularly when the court ordered said reports to be filed, yet still granted the adoption without those materials. A trial court may refuse to reopen a case where it is apparent counsel's failure to introduce evidence is attributed to a want of diligence, *Metro Ins. Agency*, 856 S.W.2d at 83, but ultimately, unresolved concerns that may bear on the best interest of a child, as in the case at bar, must be reviewed and independently weighed by the court itself. We find the trial court abused its discretion in denying Appellant's motion to reopen the evidence because the court specifically requested that Respondent's statutorily required criminal background check be filed as well as the Respondent's Children's Division history, which were not included with the adoption home study when it was filed with the court. Appellant's first point is granted and is dispositive of this appeal. Accordingly, we reverse the circuit court's order and judgment of adoption. We remand for the circuit court to reopen the evidence for the admission of the aforementioned background records so that they may be evaluated as part of the court's best interest of the child determination.

**CONCLUSION**

The judgment of the trial court is reversed and remanded.

_Rebeca Navarro-McKelvey_
Rebeca Navarro-McKelvey, J.

Thomas C. Clark II, C.J. and
Kurt S. Odenwald, J., concur.